### DEPARTMENT OF COMMERCE v DeBEERS DIAMOND INVESTMENT, LTD.

Docket No. 78-1890. Submitted February 8, 1979, at Lansing.—Decided April 2, 1979. Leave to appeal denied, 406 Mich 998.

Defendant, DeBeers Diamond Investment, Ltd., is an Arizona corporation engaged in the selling of unmounted diamonds to individual purchasers in Michigan for cash with a guarantee that it would repurchase the diamonds sold at any time in the future at the then current market price, *i.e.,* the price for which DeBeers is selling diamonds on the day of purchase. Plaintiff Department of Commerce issued an order to cease and desist selling diamonds with a repurchase guarantee on the grounds that such sales constituted sales of unregistered securities in violation of the Uniform Securities Act. Following a hearing before an administrative law judge, defendant appealed and the Ingham Circuit Court, James T. Kallman, J., affirmed the cease and desist order. Defendant appeals. *Held:*

The sale of diamonds with a repurchase guarantee does not constitute the sale of unregistered securities.

Reversed.

1. STATUTES — UNIFORM SECURITIES ACT — SECURITIES — INVESTMENT CONTRACT.

A transaction is an "investment contract" within the meaning of the Uniform Securities Act where it is a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party; a continuing relationship between the buyer and seller of real or personal property is needed to transform the sale into an "investment contract", and a simple repurchase agreement is insufficient (MCL 451.801; MSA 19.776[401]).

REFERENCES FOR POINTS IN HEADNOTES

[1] 69 Am Jur 2d, Securities Regulation-Federal § 26.
What constitutes an "investment contract" within meaning of state Blue Sky Laws. 47 ALR3d 1375.
[2] 69 Am Jur 2d, Securities Regulation-State § 26.

2. STATUTES — UNIFORM SECURITIES ACT — SECURITIES — DIAMONDS
  AS "SECURITIES".
  A seller and deliverer of diamonds for cash who neither offers
  continuing advice and services nor guarantees a return on the
  purchaser's investment but who guarantees to repurchase the
  diamonds at any time in the future at the then current market
  price does not engage in the sale of securities under the
  Uniform Securities Act.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Marc A. Goldman,* Assistant Attorney General, for plaintiff.

*Milmet, Vecchio, Kennedy & Carnago, P.C.,* for defendant.

Before: BASHARA, P.J., and V. J. BRENNAN and R. M. MAHER, JJ.

R. M. MAHER, J. Defendant DeBeers Diamond Investment, Ltd., appeals from the order of the Ingham County Circuit Court affirming a cease and desist order, issued by plaintiff, ordering defendant to cease sales of diamonds to Michigan residents on grounds that such sales constituted sales of unregistered securities in violation of the Uniform Securities Act, MCL 451.501 *et seq.;* MSA 19.776(101) *et seq.*

Defendant is an Arizona corporation which, prior to the issuance of the cease and desist order, was engaged in selling unmounted diamonds to individual purchasers in the state of Michigan. DeBeers contacted potential customers through advertisements in The Detroit News and the Detroit Free Press, offering to sell diamonds as an investment and inviting interested persons to call for more information. Those who called the number given in the ad were sent a package of advertising material which included a price list, a chart showing the increase in diamond prices over sev-

eral years, a guarantee that the appraised value of any diamond purchased would exceed the purchase price by 75%, and assurances that DeBeers would, at any time, buy back any diamond purchased from them at the current prevailing market price.[1]

On June 19, 1975, the Corporation and Securities Bureau of the Department of Commerce issued an order to defendant to cease and desist sales of diamonds with a repurchase guarantee. DeBeers timely requested a hearing on the matter, and a hearing was held on July 8, 1976, before an administrative law judge.

One R. G. Dusenberry testified at the evidentiary hearing that he read defendant's newspaper advertisement early in 1975 and called the telephone number appearing therein. As a result of the phone call, Dusenberry received the package of materials mentioned above. After obtaining prices at two or three jewelers for unmounted diamonds of a size and quality comparable to those offered by defendant, Mr. Dusenberry telephoned defendant's sales representative and placed an order. Mr. Dusenberry paid the full purchase price into a local bank and took possession of the diamonds. After taking possession of the diamonds, Mr. Dusenberry inquired of two or three retail jewelers regarding the possibility of selling his diamonds to them, but, encountering a lack of interest in such a transaction, made no further attempt to sell the diamonds.

Mr. Paul Lewis testified at the hearing that he had appraised Mr. Dusenberry's diamonds prior to the purchase, at the request of defendant. In Mr.

---

[1] Defendant's president, Alois Geiger, testified at the evidentiary hearing held before a hearing examiner that the current prevailing market price meant the price at which DeBeers was selling diamonds on the day of repurchase.

Lewis' opinion, the price at which Mr. Dusenberry purchased the diamonds was a wholesale price, although probably higher than the price which a jeweler would pay. He also testified that jewelers and others in the diamond business would ordinarily not purchase unmounted diamonds from someone they did not know, because of the danger of unwittingly purchasing stolen gems. Mr. Lewis acknowledged, however, that sales to private individuals were a common occurrence. Defendant's president, Alois Geiger, confirmed Mr. Lewis' testimony regarding the diamond business. He added that some dealers would accept gems for sale on consignment, although they would not purchase them outright.

The hearing officer, applying the common enterprise test enunciated in *Securities & Exchange Comm v W J Howey Co,* 328 US 293; 66 S Ct 1100; 90 L Ed 1244 (1946), found that defendant's sale of diamonds with a buy-back guarantee constituted an "investment contract" and was therefore an unregistered security under the Uniform Securities Act.[2] The Ingham County Circuit Court affirmed. We reverse.

We begin our analysis by noting that our Supreme Court has held that the Uniform Securities Act is to be construed so as to achieve its purposes:

"The Uniform Securities Act carries within itself the statement of its purpose, *i.e.,* to 'make uniform the law of those states which enact it and to coordinate the interpretation and administration of this act with the related federal regulation'. MCL 451.815; MSA 19.776(415). As a matter of judicial policy the act should be broadly construed to effectuate its purposes. *Tcherepnin v Knight,* 389 US 332, 336; 88 S Ct 548; 19 L Ed 2d

---

[2] Security is defined in MCL 451.801(1); MSA 19.776(401)(1) to include an investment contract.

564 (1967). 'In essence this legislation * * * is designed to protect the public against fraud and deception in the issuance, sale, exchange, or disposition of securities within the State of Michigan by requiring the registration of certain securities and transactions.' Schmidt & Cavitch, Michigan Corporation Law (1974), p 1071." *People v Dempster,* 396 Mich 700, 704; 242 NW2d 381 (1976).

In interpreting the Michigan securities statute, we look not only to the interpretations of courts in those other states which have enacted the Uniform Securities Act, but also to interpretations of Federal securities laws:

"While the interpretation Federal courts have placed upon terms under the Federal securities acts is not binding upon state courts as they interpret the Uniform Securities Act, the similarity of the purpose and provisions of the state and Federal securities statutes, particularly those purposes and provisions pertinent to the facts at hand, cannot be ignored. Interpretation of one offers valuable guidelines as to the interpretation of the other." *People v Breckenridge,* 81 Mich App 6, 16-17; 263 NW2d 922 (1978).

Courts interpreting securities statutes are careful to look beyond the form of a transaction to its substance, paying special attention to the economic realities of the situation, *People v Breckenridge, supra, United Housing Foundation, Inc v Forman,* 421 US 837; 95 S Ct 2051; 44 L Ed 2d 621 (1975), *Wiener v Brown,* 356 So 2d 1302 (Fla App, 1978).

With these principles of statutory construction in mind, we turn to the sole issue presented on appeal: whether the transaction between defendant and Mr. Dusenberry was a mere sale of goods or was, in reality, an investment contract within the meaning of MCL 451.801; MSA 19.776(401).

In reaching the conclusion that the transaction was in fact an investment contract, the hearing officer applied the definition of investment contract used by the Federal courts and first enunciated in *Securities & Exchange Comm v Howey, supra,* 298-299:

"a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party."

Defendant urges us to reject the "common enterprise" test in favor of the "risk capital" test applied in the California case of *Hamilton Jewelers v Dep't of Corporations,* 37 Cal App 3d 330; 112 Cal Rptr 387 (1974).[3] We reject defendant's suggestion, preferring to follow the majority of jurisdictions in applying the *Howey* test.[4] However, we think that a proper application of the *Howey* test to the facts of this case yields a result different from that reached by the hearing officer.

The hearing officer relied heavily on *Securities & Exchange Comm v Brigadoon Scotch Distributors, Ltd,* 388 F Supp 1288 (SD NY, 1975), in reaching his decision. In *Brigadoon Scotch* the defendant, Federal Coin Reserve, Inc. (FCR), sold portfolios of rare coins to those answering advertisements in airline magazines, medical journals and other, similar publications. Advertising brochures sent to inquirers emphasized the investment potential of the coins and offered expert assistance in selecting the coins to be purchased, assistance

[3] A third test is applied in Minnesota, where an investment contract is defined as "the placing of capital or laying out of money in a way intended to secure income or profit from its employment". *State v Coin Wholesalers, Inc,* 250 NW2d 583, 588 (Minn, 1976).

[4] See Anno: *What constitutes an "investment contract" within the meaning of state blue sky laws,* 47 ALR3d 1375.

in selling the coins, accounting services, insurance, tax advice and estate planning services. In addition, purchasers could leave their coins in the custody of FCR. FCR also promised its customers semi-annual accountings, regular financial reports and daily market quotations. Although few purchasers took advantage of the services offered, the *Brigadoon* court laid great emphasis on the availability of continuing services in finding the scheme to be an investment contract:

"FCR's brochure itself repeatedly entices its readers with assertions such as that it 'has people working all day long, each and every day making certain that all potential avenues of profit are fully explored.' * * * In *Howey* and *Joiner [SEC v C M Joiner Leasing Corp,* 320 US 344; 64 S Ct 120; 88 L Ed 88 (1943)] the Supreme Court considered such investment-oriented advertising to be factors leading to the finding of an investment contract. SEC v Howey & Co, *supra,* 328 US at 295, 66 S Ct 1100; SEC v Joiner, *supra,* 320 US at 346, 64 S Ct 120. As Judge Oakes aptly stated in *Glen-Arden [Commodities, Inc v Constantino,* 493 F2d 1027 (CA 2, 1974)]:
    " 'It ill behooves appellants, after enticing their customers with fancy brochures touting their investment plan, now to claim there was no investment plan but the mere sale of an unadorned commodity.' 493 F2d at 1034-1035." *SEC v Brigadoon Scotch Distributors, Ltd, supra,* p 1292.

In the case at bar, by contrast, defendant offered none of the services which created a continuing relationship between Federal Coin Reserve and its customers. Defendant herein did guarantee to repurchase any diamond sold at the same price at which it was selling diamonds on the repurchase date. However, purchasers were free to sell their stones elsewhere, and there was no built-in incen-

tive to resell to defendant.[5] The hearing officer's conclusion that buyers were tied to defendant because of the absence of a market for resale of diamonds purchased is simply not supported by the evidence adduced at the hearing. Although Mr. Lewis and Mr. Geiger agreed that an outright sale for cash to a diamond merchant or jeweler was unlikely, they also testified that sales to private individuals were common and that many dealers would accept diamonds from private owners for sale on a consignment basis. The only other evidence regarding market availability was Mr. Dusenberry's testimony that he had made a few telephone inquiries to retail jewelers and was disappointed with the results.[6] On this record we cannot find evidence sufficient to support the hearing officer's conclusion regarding the absence of a resale market, *cf. Farmers State Bank of Concord v Dep't of Commerce, Financial Institutions Bureau,* 77 Mich App 313; 258 NW2d 496 (1977).

A review of recent cases in other jurisdictions involving sales of real or personal property supports our conclusion that more is needed to create an investment contract than a simple repurchase guarantee. In cases where a sale of property is held to be an investment contract, a continuing relationship between seller and buyer is an essential feature of the transaction. In *Lowery v Ford*

---

[5] Compare *Investment Diamonds, Inc* [1971-1972 Transfer Binder] Fed Sec L Rep (CCH) ¶ 78,350, where the Securities and Exchange Commission in a staff opinion found an investment contract in a sale of diamonds accompanied by options either to resell to seller at a predetermined price or to trade in a diamond on a larger stone for a credit amount larger than the repurchase price. The opinion emphasized that the scheme made the trade-in option so much more advantageous to the buyer that its effect was to tie the buyer's fortunes to those of the seller in his search for profit.

[6] Mr. Dusenberry testified that he "nosed around a little bit" and was told by one jeweler to bring the stones in and "I'll see what I can do for ya". Mr. Dusenberry did not take his diamonds to the jeweler.

*Hill Investment Co,* 556 P2d 1201; 84 ALR3d 997 (Colo, 1976), sale of a condominium was found to be an investment contract because the purchasers were required to sign an agreement giving the seller exclusive control over rental of the unit, including the right to set rental rates. In *O'Quinn v Beach Associates,* — SC —; 249 SE2d 734 (1978), by contrast, no investment contract was found despite an agreement appointing the seller as rental agent, where the service was optional and the buyer retained ultimate control over the condominium. The courts in both cases applied the *Howey* test.[7] *McCown v Heidler,* 527 F2d 204 (CA 10, 1975), cited in plaintiff's brief, involved a sale of undeveloped lots in a real estate development. The court there noted that any expectation of profit depended on the developer successfully completing the project. In the case at bar, diamonds may be expected to appreciate or depreciate independently of any efforts on defendant's part.

The Supreme Court of Washington, applying the *Howey* test, held in *McClellan v Sundholm,* 89 Wash 2d 527; 574 P2d 371 (1978), that sales of silver bars accompanied by selection, storage and resale services, along with continuing advice on the silver market, constituted investment contracts within the meaning of the Uniform Securities Act. Similarly, staff opinions of the Securities and Exchange Commission reach the same conclusion where similar services are offered, see *Jim Halperin, Inc* [1976-1977 Transfer Binder] Fed Sec L Rep (CCH) ¶ 80,715, *Joseph L Aurichio* [1976-1977 Transfer Binder] Fed Sec L Rep (CCH) ¶ 80,966, *Charles Anthony Diamond Investments, Ltd [1976-1977 Transfer Binder] Fed Sec L Rep*

---

[7] Both Colorado and South Carolina have enacted the Uniform Securities Act.

*(CCH)* ¶ *80,623. In Texas Arizona Mining Co, Inc* [1971-1972 Transfer Binder] Fed Sec L Rep (CCH) ¶ 78,626, on the other hand, the SEC held that a negotiable contract redeemable for an amount of silver on a date certain, to be guaranteed by a financial institution and sold in expectation of a rise in the price of silver, was not an investment contract. See also *Art Appraisers of America, Ltd* [1976-1977 Transfer Binder] Fed Sec L Rep (CCH) ¶ 80,796, finding no investment contract involved in sale of packages of selected lithographs, accompanied by an appraisal and tax advice. *Cf. Longines Symphonette Society* [1972-1973 Transfer Binder] Fed Sec L Rep (CCH) ¶ 79,151 (sale of medallion with cost plus 10% buy-back guarantee is a security).

In *Jenson v Continental Financial Corp,* 404 F Supp 792 (D Minn, 1975), relied on by plaintiff in its brief, defendant CCEX dealt in gold and silver coins, offering customers the option of purchasing coins for cash or on margin. Ninety percent of sales were margin sales, and 90 percent of margin customers eventually resold their coins to CCEX without ever having taken possession of the coins. CCEX would redeem only its own margin contracts, and CCEX contracts were not recognized by other, similar companies. Contracts were not assignable unless the balance was paid to CCEX. Noting that the investor's expectation of profits was inextricably intertwined with the success or failure of CCEX's enterprise, the *Jenson* court found that CCEX's margin contracts were investment contracts. Accord, *State v Coin Wholesalers, Inc,* 250 NW2d 583 (Minn, 1976), applying Minnesota test (see footnote 3, *supra).*

In the case at bar, defendant neither sells on margin, offers continuing advice and services, nor

guarantees a return on the purchaser's investment. Sales are for cash, and the purchaser immediately takes possession of the diamonds. Purchasers may elect, but are not required either by contract or by circumstances, to resell the diamonds to defendant at some time in the future. The case before us is thus distinguishable on its facts from those cases in which a purported sale of property has been found to be an investment contract. Even the most expansive interpretation of the *Howey* test has not gone so far as plaintiff would have us go in this case, see *SEC v Brigadoon Scotch Distributors, Ltd, supra.* We do not read the cases interpreting the Uniform Securities Act and similar statutes as holding that advertisements which offer commodities as investments, coupled with a guarantee to buy the goods back at market price, are sufficient to transform a simple sale of personalty into an investment contract.

The order of the circuit court is reversed and the cease and desist order is vacated. No costs, a public question being involved.