PEOPLE v COOPER

PEOPLE v ATTAWAY

PEOPLE v BYAS

Docket Nos. 86465, 86593, 86927. Submitted October 7, 1986, at Lansing. Decided December 14, 1987.

Arthur Attaway, Marvin Pittman, Delores Pittman, Yong Ja Byas and John Cooper were charged in the Oakland Circuit Court with violating the pyramid promotion act, selling unregistered securities, and transacting a securities business without being registered. The defendants moved to quash the information. They argued that there was insufficient evidence to find that their marketing scheme was a pyramid promotion or a security. Defendants also moved to suppress evidence on the ground that the affidavit in support of the search warrant used to obtain the evidence was defective. Further, defendants moved to dismiss the charges alleging violation of the right to a speedy trial. The trial court, Hilda R. Gage, J., denied defendants' motions. Defendants responded by filing a motion for reconsideration and a motion requesting that the pyramid promotion act be found unconstitutional. Those motions were denied, and all the defendants, except Marvin Pittman, pled guilty to an added misdemeanor count of advertising, printing or publishing lottery tickets or gift enterprises. The pleas were conditional, preserving defendants' right to appeal from the adverse rulings on the issues raised in the trial court. Defendants Attaway, Byas and Cooper appealed as of right from

REFERENCES

Am Jur 2d, New Topic Service, Consumer and Borrower Protection § 228.

Am Jur 2d, Criminal Law §§ 849 et seq.

Am Jur 2d, Gambling §§ 62, 63.

Am Jur 2d, Securities Regulation—State § 27.

Accused's right to speedy trial under Federal Constitution—Supreme Court cases. 71 L Ed 2d 983.

What is an "investment contract" within the meaning of sec. 2(1) of the Securities Act of 1933 (15 USC sec. 77b(1)), defining the term "security" as including an investment contract. 3 ALR Fed 592.

Validity of pyramid distribution plan. 54 ALR3d 217.

their convictions. The appeals were consolidated by the Court of Appeals.

The Court of Appeals *held:*

1. There was sufficient evidence presented at the preliminary examination to bind the defendants over on the charge of violating the pyramid promotion act. The major emphasis of defendants' program was the recruitment of additional participants, not the marketing of the product. There was probable cause to believe that the individual conduct of the defendants violated the pyramid promotion act.

2. The lower courts properly determined that defendants' marketing plan constituted a security. The district court did not abuse its discretion in binding defendants over on the charge of selling unregistered securities. That a tangible product was involved does not preclude the existence of a security. The existence of an option to purchase the product without participating in the pyramid bonuses is not inconsistent with a finding that the entire scheme was an investment contract.

3. The pyramid promotion act is constitutional.

4. The brochure provided by the defendants was sufficient for the magistrate to find that probable cause existed to believe that defendants were engaged in offering participation in a pyramid promotion and in offering unregistered securities. The search warrant was properly issued.

5. *Defendant Cooper's right to a speedy trial was not abridged.*

Affirmed.

1. CRIMINAL LAW — PYRAMID PROMOTION ACT — OFFERS.

The pyramid promotion act applies to anyone who offers or sells participation in a pyramid or chain promotion; the term "offer" means to present for acceptance or rejection, hold out, or to bring or put forward for action or consideration (MCL 445.1528; MSA 19.854[28]).

2. SECURITIES REGULATION — INVESTMENT CONTRACTS.

An investment contract is included in the definition of a "security"; an "investment contract" is a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party; the term "solely" should not be strictly interpreted but, rather, means whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise (MCL 451.801[1]; MSA 19.776[401][1]).

3. SECURITIES REGULATION — MARKETING PLANS — TANGIBLE PRODUCTS.

The fact that a tangible product is involved does not preclude a finding that a certain marketing plan is actually a security (MCL 451.801[1]; MSA 19.776[401][1]).

4. CONSTITUTIONAL LAW — PYRAMID PROMOTION ACT.

The pyramid promotion act is constitutional (MCL 445.1528; MSA 19.854[28]).

5. CONSTITUTIONAL LAW — SPEEDY TRIAL — CRIMINAL LAW.

The factors to be considered in evaluating a defendant's claim of deprivation of the right to a speedy trial are: (1) length of delay; (2) reason for delay; (3) whether the defendant asserted his right to a speedy trial. below; and (4) prejudice to the defendant; the length of delay is insufficient in itself to require dismissal.

6. CONSTITUTIONAL LAW — SPEEDY TRIAL — CRIMINAL LAW.

A delay of eighteen months or more shifts the burden to the prosecutor to prove that a defendant claiming deprivation of the right to a speedy trial has not been prejudiced.

7. CONSTITUTIONAL LAW — SPEEDY TRIAL — CRIMINAL LAW.

A delay caused by the court system is attributed to the prosecution, however, it has a neutral tint and should be given only minimal weight in determining whether a defendant's speedy trial right has been violated.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Michael J. Modelski,* Assistant Prosecuting Attorney, for the people.

*Hylton & Hylton, P.C.* (by *Kenneth N. Hylton, Sr.*), for defendant Cooper.

*Stephen A. Boone* and *R. Emmet Hannick,* for defendant Attaway.

*Cooper, Shifman, Gabe, Quinn & Seymour* (by *Philip H. Seymour*), for defendant Byas.

Before: R. M. MAHER, P.J., and D. E. HOLBROOK, JR., and M. R. STEMPIEN,* JJ.

PER CURIAM. Arthur Attaway, Marvin Pittman, Delores Pittman, Yong Ja Byas and John Cooper were charged with (1) violating the pyramid promotion act, MCL 445.1528; MSA 19.854(28), (2) selling unregistered securities, MCL 451.701; MSA 19.776(301), and (3) transacting a securities business without being registered, MCL 451.601; MSA 19.776(201). On March 20, 1985, all but Marvin Pittman pled guilty to an added misdemeanor count of advertising, printing or publishing lottery tickets or gift enterprises, MCL 750.375; MSA 28.607. Defendants Attaway, Byas and Cooper appeal as of right from their convictions on the misdemeanor charge.[1]

Lawrence Friedman, while working as an intern for the Corporations and Securities Bureau of the State of Michigan, answered an advertisement placed in The Detroit News concerning an income opportunity. He was told by a person who identified herself as Dee Pittman that the investment involved little risk and one could earn from $9,000 to $12,000 a month. She invited Friedman to a reception explaining the opportunity. Friedman attended the reception with Detective Vortman of the Michigan State Police. At the reception they met Dee Pittman and Marvin Pittman. Dee thanked them for coming and told them they would be hearing about the marketing plan and the product. Marvin handed them a brochure which listed various prizes they would be awarded as bonuses for signing up people quickly. During the reception Friedman met Arthur Attaway. Att-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Attaway's, Cooper's and Byas' appeals were consolidated by this Court for purposes of submission and oral argument.

away explained that he was one of the promoters of the program and that it was a very good opportunity.

Following the reception, the attendees were ushered into a conference room. The first speaker was a woman whom Friedman identified as Yong Ja Byas. Byas told the audience that if they took part in the investment opportunity they would be able to buy cars and furs. At the conclusion of her presentation, she introduced John Cooper.

Cooper described the product as an all-purpose scented lotion. A person was required to pay $30.80 in order to enroll in the program; $20 for the product, $.80 for tax, $7.50 for a computer hookup, and $2.50 for shipping and handling. In exchange, the person would receive two eight-ounce bottles of the lotion. The next step was to enroll other participants. Bonuses were based on the number of additional participants enrolled. The following example was provided in the brochure handed out at the meeting:

When (5) New Independent Business Clients are enrolled by you, your bonus ($1.00) on their initial and subsequent purchases will be $5.00. This is your First Generation.

When these (5) Independent Business Clients enroll an additional (5), your bonus ($1.00) on their initial and subsequent purchases will be $25.00. This is your Second Generation.

When these twenty-five Independent Business Clients enroll an additional (5), your bonus ($2.00) on their initial and subsequent purchases will be $250.00. This is your Third Generation.

When these one hundred twenty-five Independent Business Clients enroll an additional (5), your bonus ($3.00) on their initial and subsequent purchases will be $1875.00. This is your Fourth Generation.

When these six hundred twenty-five Indepen-

dent Business Clients enroll an additional (5), your bonus ($3.00) on their initial and subsequent purchases will be $9,375.00. This is your Fifth Generation.

This is a total of $11,530.00. Your hardest task will be to give this brochure to (5) serious people and call these same people once a week to see how they are doing.

Calculate your bonus potential if you would enroll (10) Independent Business Clients.

The bonuses continued for every month that the initial participant and the subsequent participants purchased the lotion. According to Friedman, Cooper stressed that the only effort required of the original participant was to enroll the second level participants and to purchase the product each month. He also emphasized that the product was required to be purchased each month, whether one needed it or not, in order to maintain one's active status. Cooper explained that one could resell the excess lotion or give it away. Direct sales would not, however, result in additional bonuses.

Detective Vortman signed up for the program and paid $30.80. She attended a second meeting the following Saturday with Detective Bolden. The Pittmans, Byas, Cooper and Attaway were also present at this meeting. Dee Pittman told Vortman that Cooper had designed the program and Attaway had provided the money for it. Byas and Cooper repeated their presentations. At the second meeting, Bolden signed up and named Vortman as his sponsor. Vortman subsequently received a check for $1 from the company. Prior to the second meeting, Vortman had applied for permission to wear a hidden microphone. Arrest warrants were issued after she played the tapes for the prosecutor's office.

Following their bindover on the charged offen-

ses, defendants moved to quash the information. They argued that there was insufficient evidence to find that their marketing scheme was a pyramid promotion or a security. Defendants also moved to suppress the evidence gathered by Detective Vortman at the second meeting on the ground that the affidavit in support of the search warrant was defective. Further, defendants moved to dismiss the charges since they allegedly had been denied the right to a speedy trial. The trial court denied defendants' motions. Defendants responded by filing a motion for reconsideration and a motion requesting that the pyramid promotion act be found unconstitutional. All the defendants, except Marvin Pittman, tendered their guilty pleas to the misdemeanor charge following the trial court's denial of those motions. The pleas were conditional, preserving defendants' right to appeal from the adverse rulings on the issues raised in the trial court.

The first issue raised is whether the district court abused its discretion in binding the defendants over on the charge of violating the pyramid promotion act.

The primary function of a preliminary examination is to "determine if a crime has been committed and, if so, if there is probable cause to believe the defendant committed it." *People v Duncan,* 388 Mich 489, 499; 201 NW2d 629 (1972). Positive proof of guilt is not required but there must be evidence of each element of the offense or evidence from which the elements can be inferred. *People v Doss,* 406 Mich 90, 100-101; 276 NW2d 9 (1979), citing *People v Oster,* 67 Mich App 490; 241 NW2d 260 (1976), lv den 397 Mich 848 (1976). However, the object of the preliminary examination is not to prove guilt or innocence beyond a reasonable doubt. The case should be left for the jury when

the evidence conflicts or raises a reasonable doubt as to a defendant's guilt. *Doss, supra,* p 103; *People v Medley,* 339 Mich 486; 64 NW2d 708 (1954).

The pyramid promotion act, MCL 445.1528; MSA 19.854(28), provides:

> (1) A person may not offer or sell any form of participation in a pyramid or chain promotion. A pyramid or chain promotion is any plan or scheme or device by which (a) a participant gives a valuable consideration for the opportunity to receive compensation or things of value in return for inducing other persons to become participants in the program or (b) a participant is to receive compensation when a person introduced by the participant introduces one or more additional persons into participation in the plan, each of whom receives the same or similar right, privilege, license, chance, or opportunity.

Defendants argue that their marketing plan did not violate the statute as bonuses were based on sales of the product. The district court and the trial court found that the lotion was a mere token as the primary focus of the plan was the recruitment of new members. We agree that there was sufficient evidence presented at the preliminary examination to bind defendants over on this charge. While it is true that one could receive bonuses even if a purchaser did not recruit others, the potential monthly incomes offered by defendants were only possible with the continued recruitment of participants. Defendants' plan also required participants to purchase the lotion on a monthly basis regardless of whether they needed the product. In addition, no bonuses were paid for direct sales of the lotion. That the product may have been worth $20 does not affect our decision. A review of the preliminary examination tran-

script and defendants' literature leads us to conclude that the major emphasis of the program was the recruitment of additional participants, not the marketing of the product.

Defendants' claims as to whether their plan involved franchises is irrelevant. The pyramid promotion act prohibits "any plan or scheme or device" which fits either of the two delineated definitions. We do not interpret this language as restricting the reach of the statute merely to franchises.

We also find that there was probable cause to believe that the individual conduct of the defendants violated the statute. The pyramid promotion act applies to anyone who offers or sells participation in a pyramid or chain promotion. One common definition of "offer" is "to present for acceptance or rejection, hold out . . . to bring or put forward for action or consideration . . . ." *Webster's Third New International Dictionary, Unabridged Edition* (1966). The promotional activities of Attaway, Cooper and Byas fall within this definition.

Defendants further claim that the district court abused its discretion in binding them over on the charge of selling unregistered securities.

Included in the definition of "security" is any "investment contract." MCL 451.801(1); MSA 19.776(401)(1). In *Securities & Exchange Comm v W J Howey Co*, 328 US 293, 298-299; 66 S Ct 1100; 90 L Ed 1244 (1946), the United States Supreme Court set forth the following definition of an investment contract:

> [A] contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party.

We adopted this test in *Dep't of Commerce v DeBeers Diamond Investment, Ltd,* 89 Mich App 406, 411; 280 NW2d 547 (1979). At issue in this case is whether investors in defendants' marketing plan were led to expect profits solely from the efforts of defendants or a third party.

The Uniform Securities Act is to be construed so as to achieve its purposes:

> The Uniform Securities Act carries within itself the statement of its purpose, i.e., to "make uniform the law of those states which enact it and to coordinate the interpretation and administration of this act with the related federal regulation." MCL 451.815; MSA 19.776(415). As a matter of judicial policy the act should be broadly construed to effectuate its purposes. *Tcherepnin v Knight,* 389 US 332, 336; 88 S Ct 548; 19 L Ed 2d 564 (1967). "In essence this legislation . . . is designed to protect the public against fraud and deception in the issuance, sale, exchange, or disposition of securities within the State of Michigan by requiring the registration of certain securities and transactions." Schmidt & Cavitch, Michigan Corporation Law (1974), p 1071. [*People v Dempster,* 396 Mich 700, 704; 242 NW2d 381 (1976).]

In interpreting the Michigan securities statute, we look not only to the interpretations of courts in those states which have also enacted the Uniform Securities Act, but also to interpretations of federal securities law. *People v Breckenridge,* 81 Mich App 6, 16-17; 263 NW2d 922 (1978). In addition,

> [c]ourts interpreting securities statutes are careful to look beyond the form of a transaction to its substance, paying special attention to the economic realities of the situation, *People v Breckenridge, supra; United Housing Foundation, Inc v Forman,* 421 US 837; 95 S Ct 2051; 44 L Ed 2d 621 (1975); *Wiener v Brown,* 356 So 2d 1302 (Fla App,

1978). [*Dep't of Commerce v DeBeers, supra,* p 410.]

Defendants argue that the lower courts erred in applying the *Howey* test insofar as finding that the profits from their plan were to be derived from the efforts of others. The lower courts relied in part upon *Securities & Exchange Comm v Glenn W Turner Enterprises, Inc,* 474 F2d 476 (CA 9, 1973), cert den 414 US 821; 94 S Ct 117; 38 L Ed 2d 53 (1973). Therein "solely" was expanded to include a similar pyramid scheme under the definition of investment contract. Investors in the defendant's company purchased self-improvement courses and received the right to sell the courses to others. Investors would receive a portion of the sale price in exchange for bringing in new recruits. After reviewing the specifics of the plan, the Ninth Circuit Court concluded:

> We hold, however, that in light of the remedial nature of the legislation, the statutory policy of affording broad protection to the public, and the Supreme Court's admonitions that the definition of securities should be a flexible one, the word "solely" should not be read as a strict or literal limitation on the definition of an investment contract, but rather must be construed realistically, so as to include within the definition those schemes which involve in substance, if not form, securities. . . .
>
> Strict interpretation of the requirement that profits to be earned must come "solely" from the efforts of others has been subject to criticism. See, e.g., *State of Hawaii v Hawaii Market Center* [52 Hawaii 642] 485 P2d 105 [1971]. Adherence to such an interpretation could result in a mechanical, unduly restrictive view of what is and what is not an investment contract. It would be easy to evade by adding a requirement that the buyer contribute a modicum of effort. Thus the fact that the inves-

tors here were required to exert some efforts if a return were to be achieved should not automatically preclude a finding that the Plan or Adventure is an investment contract. To do so would not serve the purpose of the legislation. Rather we adopt a more realistic test, whether the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise. [474 F2d 482.]

The Ninth Circuit court's expanded definition of "solely" was adopted by the Fifth Circuit court in *Securities & Exchange Comm v Koscot Interplanetary, Inc,* 497 F2d 473 (CA 5, 1974). There, investors purchased cosmetics distributorships. Profits were derived from the sale of additional distributorships by the initial investors. The court ruled that the plan was an investment contract as the promoters retained immediate control over the essential managerial conduct of the enterprise and the investor's realization of profits was inextricably tied to the success of the promotional scheme. 497 F2d 485. In *Davis v Avco Financial Services, Inc,* 739 F2d 1057, 1063 (CA 6, 1984), the Sixth Circuit Court of Appeals concurred and adopted the analysis of the Ninth and Fifth Circuits in finding that a similar marketing plan was a security. In contrast, the Sixth Circuit Court of Appeals has declined to find a general partnership interest a security. *Odom v Slavik,* 703 F2d 212 (CA 6, 1983). However, the court's ruling in that case was based on the lack of evidence showing that the investor lacked the power under the partnership agreement and the state partnership laws to participate in the partnership affairs.

Here, once a participant in the plan recruited the first generation of people, the participant merely continued to invest $20 per month. The

success or failure of the plan essentially depended upon the managerial and entrepreneurial skills of defendants. Applying the test formulated in *Glenn Turner Enterprises, supra,* we agree with the lower courts that defendants' marketing plan constituted a security.

That a tangible product was involved does not preclude the existence of a security. *Bell v Health-Mor, Inc,* 549 F2d 342, 345-346 (CA 5, 1977). As in *Bell,* the participants here were not merely purchasing a product. Rather, they were also buying an income opportunity; the right to receive lucrative profits in exchange for the recruitment of others into the program.

Finally, we do not believe that the option to purchase the lotion without participating in the pyramid bonuses changes the economic realities of the plan. The existence of such an option is not inconsistent with finding that the entire scheme was an investment contract. *Securities & Exchange Comm v Aqua-Sonic Products Corp,* 687 F2d 577, 582-583 (CA 2, 1982). The focus on this program was not the value of the product, but the money one could receive by recruiting others into the plan. The typical investor who was being solicited would be expected under all the circumstances to accept the bonus option.

Defendants Attaway and Byas next argue that the pyramid promotion act is unconstitutionally vague.

A criminal statute can be challenged for vagueness on three grounds:

> 1. It does not provide fair notice of the conduct proscribed.
> 2. It confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed.

3. Its coverage is overbroad and impinges on First Amendment freedoms. [*People v Howell,* 396 Mich 16, 20; 238 NW2d 148 (1976).]

Defendants attack the statute on the first two grounds, arguing (1) they failed to receive fair notice that sales of goods are covered by the statute, (2) they did not receive notice that their actions in promoting the plan were proscribed by the statute, and (3) the Legislature's failure to define "consideration" and "compensation" invites arbitrary and discriminatory enforcement of the statute.

To be constitutional, the contested language must give a person of ordinary intelligence notice of the conduct which will make him or her criminally liable. A term not defined in a statute is given its ordinary meaning. The contested language must also provide standards for enforcing and administrating the law in order to ensure that enforcement is not arbitrary or discriminatory. *People v Hicks,* 149 Mich App 737, 741-742; 386 NW2d 657 (1986). However, reversal is not required where a statute can be narrowly construed and "where defendant's conduct falls within that proscribed by the properly construed statute." *People v Harbour,* 76 Mich App 552, 558; 257 NW2d 165 (1977), lv den 402 Mich 832 (1977).

We find the pyramid promotion act constitutional. While it does not specifically prohibit the sale of goods, defendants were put on notice that "any plan or scheme or device" by which a participant is offered the opportunity to become involved in a pyramid promotion is prohibited. As stated previously, we believe that the lower courts properly characterized the defendants' scheme as a pyramid promotion, not a multi-level marketing plan. It is also true that the statute does not

specifically prohibit the promotion of a proposed scheme. However, we believe that defendants were fairly apprised that their activities in explaining and extolling the benefits of the plan violated the statute as "offer" includes "to present for acceptance or rejection." Finally, we recognize that the statute fails to define "compensation" or "consideration." Nonetheless, these terms have ordinary meanings readily and easily understandable to people of normal intelligence. In addition, the ordinary accepted meanings of the terms are sufficiently precise to prevent arbitrary and discriminatory enforcement.

Defendant Cooper further claims that the affidavit in support of Detective Vortman's search warrant failed to set forth sufficient facts to establish probable cause.

A search warrant may not be issued absent probable cause. Const 1963, art 1, § 11; MCL 780.651; MSA 28.1259(1). Probable cause exists when the facts and circumstances would warrant a person of reasonable prudence to believe that the evidence of a crime or contraband sought are in the stated place. *People v Sundling,* 153 Mich App 277, 285-286; 395 NW2d 308 (1986).

> "The affidavit must contain facts within the knowledge of the affiant, as distinguished from mere conclusions or belief. An affidavit made on information and belief is not sufficient. The affidavit should clearly set forth the facts and circumstances within the knowledge of the person making it, which constitute the grounds of the application. The facts should be stated by distinct averments, and must be such as in law would make out a cause of complaint. *It is not for the affiant to draw his own inferences. He must state matters which justify the drawing of them." [People v Rosborough,* 387 Mich 183, 199; 195 NW2d 255

(1972), quoting 2 Gillespie, Michigan Criminal Law
& Procedure (2d ed), § 868, p 1129. Emphasis in
*Rosborough.*]

In this case, the copy of the affidavit offered in
support of the search warrant was not included in
the record on appeal. However, Cooper admits in
his appellate brief that a copy of the brochure
explaining defendants' plan was attached to the
affidavit. We find that the brochure alone was
sufficient for the magistrate to find that probable
cause existed to believe that defendants were en-
gaged in offering participation in a pyramid pro-
motion and in offering unregistered securities.

Defendant Cooper's final claim is that he was
denied his right to a speedy trial.

In *People v Grimmett,* 388 Mich 590; 202 NW2d
278 (1972), the Michigan Supreme Court adopted
the four-factor test set forth in *Barker v Wingo,*
407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972),
for evaluating a claim of deprivation of the right
to a speedy trial. Factors to be considered are: (1)
length of delay; (2) reason for delay; (3) whether
the defendant asserted his right to a speedy trial
below; and (4) prejudice to the defendant.

In this case, defendants were arrested on March
26, 1983. A prepreliminary examination confer-
ence was conducted on April 27, and was ad-
journed by the parties to May 19. On May 19, it
was agreed that the preliminary examination
would be held on June 28. The examination was
subsequently adjourned at defendants' request to
June 7. Written briefs were requested by the
magistrate to be submitted by August 11. The
defense submitted its briefs on September 25, and
the prosecution on December 9. The magistrate
issued her opinion binding defendants over for
trial on August 30, 1984. Following the bindover,

defendants filed a number of motions in the circuit court. These motions were heard on January 9, 1985. The trial court issued its opinion denying the motions on January 16, 1985. In denying a defense motion based on claims of prejudicial delay, the trial court noted that the case had been set for trial on November 5, 1984, but was adjourned at defendants' request. Defendants subsequently filed their motions for reconsideration and to find the pyramid promotion act unconstitutional. The trial court denied these motions on February 27, 1985. On March 20, 1985, defendants tendered their conditional guilty pleas.

A delay of eighteen months or more shifts the burden to the prosecutor to prove that defendant has not been prejudiced. *People v Den Uyl,* 320 Mich 477; 31 NW2d 699 (1948); *People v Lowenstein,* 118 Mich App 475, 487; 325 NW2d 462 (1982). In this case, almost two years elapsed between Cooper's arrest and the tender of his guilty plea. Accordingly, we start with the presumption that Cooper has been prejudiced.

Most of the delay occurred in the district court. The prosecutor argues that the court's congested docket contributed to the delay. The complex nature of this case no doubt also played a part. While a delay caused by the court system is attributed to the prosecution, it has a neutral tint and should be given only minimal weight in determining whether a defendant's speedy trial right has been violated. *People v Williams,* 145 Mich App 614, 618; 378 NW2d 769 (1985); *People v Ewing,* 101 Mich App 51, 55; 301 NW2d 8 (1980).

In the present case, Cooper did not file a motion requesting trial. However, he did file a motion to dismiss, along with other motions. This motion was filed in the circuit court on December 3, 1984.

We find that defendant did assert his right to a speedy trial in the present case, albeit belatedly.

The length of delay is insufficient in itself to require dismissal. *Lowenstein, supra,* pp 489-490. The only prejudice that defendant Cooper asserts is that unspecified evidence was lost due to the delay. In *Lowenstein,* the defendant asserted a similar general type of prejudice. This Court dismissed the case, finding that the two-year delay could not be tolerated as the case involved only defendant and merely a misdemeanor. However, the Court noted that where a case against the defendant is complex or involves numerous defendants, more delay is tolerated.

While we have no doubt that defendant was prejudiced to some extent by the two-year delay in bringing his case to trial, we find that Cooper's right to a speedy trial was not abridged. This case involved numerous defendants and complex legal and factual issues. Very little of the delay can be directly attributed to the prosecutor. When balanced against the lack of any specific prejudice to Cooper's ability to present a defense, we cannot conclude that this case should be dismissed. See *People v Rosengren,* 159 Mich App 492, 507-508; 407 NW2d 391 (1987); *People v Matlock,* 153 Mich App 171, 177; 395 NW2d 274 (1986).

Affirmed.