*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KENNETH LAVAUGHN JOHNSON,

Defendant-Appellant.

UNPUBLISHED
January 24, 2025
1:05 PM

No. 365263
Wayne Circuit Court
LC No. 21-001928-01-FC

Before: FEENEY, P.J., and SWARTZLE and CAMERON, JJ.

PER CURIAM.

Defendant was convicted following a jury trial, of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84(1),[1] felon in possession of a firearm, MCL 750.224f(1), and two counts of carrying a firearm during the commission of a felony, second offense (felony-firearm), MCL 750.227b, for which he was sentenced as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 25 to 50 years for the AWIGBH conviction, and 19 months to 50 years for the felon-in-possession conviction, to be served consecutively to two concurrent five-year terms of imprisonment for the felony-firearm convictions. He now appeals and we affirm.

## I. FACTUAL OVERVIEW

Defendant's convictions arise from the August 26, 2020 nonfatal shooting of Kierra Williams in the parking lot of an apartment complex in Detroit. The prosecutor theorized that defendant shot Williams in the arm after they had aggressively argued throughout the evening at the home of Williams's friend, Sterling Porter. There was evidence that, at times, Williams welded a knife, and defendant brandished a gun. Video footage extracted from exterior surveillance cameras captured most of the series of Williams's and defendant's interaction. Subsequently, defendant left the complex driving his Ford Focus, Porter followed in her car to return certain

---

[1] The jury found defendant guilty of AWIGBH as a lesser offense to an original charge of assault with intent to commit murder, MCL 750.83.

items to defendant, and Williams followed in her car. Williams testified that, after she caught up to defendant's car, he rear-ended her vehicle, causing damage to both cars. Williams and Porter returned to the complex, and, shortly thereafter, defendant returned in a Ford SUV, pulled into the parking lot, exited the car, and yelled before he shot Williams once in the arm. Video footage extracted from a parking lot surveillance camera captured these events, but the quality was not clear enough to see the shooter's face. Williams identified defendant as the shooter while giving a statement to the police at the hospital and at trial.

In turn, the defense asserted that defendant was not the shooter, and that Williams had a "vendetta" against him. The defense also asserted that only Williams identified defendant as the shooter, highlighting that Porter, who witnessed the shooting, refused to testify, and that the police failed to issue an investigative subpoena. In closing argument, defense counsel urged the jury "to find Mr. Johnson not guilty, because the only thing linking Mr. Johnson to this is Wicked Williams, who has been a known liar, multiple times[,] [h]as already filed false police reports and she just did it again."

## II. SPEEDY TRIAL

Defendant first argues that he was denied his constitutional right to a speedy trial. We disagree.

The United States and Michigan Constitutions guarantee criminal defendants the right to a speedy trial. US Const, Am VI; Const 1963, art 1, § 20; *People v Patton*, 285 Mich App 229, 235 n 4; 775 NW2d 610 (2009). The determination whether a defendant was denied a speedy trial is a mixed question of fact and law. *People v Waclawski*, 286 Mich App 634, 664; 780 NW2d 321 (2009). The trial court's factual findings are reviewed for clear error, while the constitutional issue is a question of law subject to de novo review. *Id*. "In determining whether a defendant has been denied a speedy trial, four factors must be balanced: (1) the length of the delay, (2) the reasons for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) prejudice to the defendant from the delay." *People v Mackle*, 241 Mich App 583, 602; 617 NW2d 339 (2000) (citations omitted).

The delay period commences at the defendant's arrest. *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006), citing *United States v Marion*, 404 US 307, 312; 92 S Ct 455; 30 L Ed 2d 468 (1971). In *Marion*, the Supreme Court held that "the Sixth Amendment speedy-trial provision has no application until the putative defendant in some way becomes an 'accused,' " which does not occur until "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." *Marion*, 404 US at 313. In this case, defendant was arrested and jailed on August 29, 2020, and trial began approximately 25 months later on September 20, 2022. "A delay of more than eighteen months is presumed to be prejudicial and the burden is on the prosecution to prove lack of prejudice." *People v Simpson*, 207 Mich App 560, 563; 526 NW2d 33 (1994). "[T]here is no set number of days between a defendant's arrest and trial that is determinative of a speedy trial claim." *Waclawski*, 286 Mich App at 665. Thus, we must review the remaining factors.

The second factor requires consideration of what caused the delays. In assessing the reasons for the delay, we must examine to whom the delay is attributable. The trial court examined

the procedural history of the case, and we agree with its finding that COVID-19 restrictions caused a substantial delay. As plaintiff aptly observes, the trial court repeatedly detailed the effects that COVID-19 had on the proceedings, emphasizing that (1) trials had been paused from March 17, 2020, through September 30, 2020; (2) a spike in COVID-19 again suspended jury trials from November 2020 through April 2021; (3) from May 2021 until March 31, 2022, only two jury trials per month for the Third Circuit Court were allowed to be scheduled; (4) from April 1, 2022 until September 5, 2022, each court was allowed to schedule two trials from their docket each month; (5) the Michigan Department of Correction restricted the transfer of prisoners at times because of COVID-19; and (6) the trial court judge set to preside over defendant's first scheduled trial contracted COVID-19. We recently held that "delays caused by the COVID-19 pandemic are not attributable to the prosecution when evaluating a speedy-trial claim." *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114), slip op at 1.

Plaintiff concedes that a total of approximately nine months is attributable to the prosecution because (1) the reasons for some delays were unclear; (2) the prosecutor did not arrange for defendant to appear by Zoom once; (3) general delays because of docket congestion; and (4) a transcript was not timely prepared. The prosecutor is held accountable for unexplained or otherwise unattributable delays. *People v Lown*, 488 Mich 242, 261; 794 NW2d 9 (2011). Delays and docket congestion inherent in the court system are " 'technically attributable to the prosecution, [but] they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial.' " *People v Gilmore*, 222 Mich App 442, 460; 564 NW2d 158 (1997) (citation omitted).

Defendant, however, fails to acknowledge that a total of approximately eight months should be attributed to the defense. The record shows that the defense made several requests for adjournments. When a defendant requests an adjournment, the delay is attributable to the defendant. *People v Cain*, 238 Mich App 95, 113; 605 NW2d 28 (1999). For example, on September 9, 2020, defendant requested to adjourn the probable cause conference, which was adjourned until October 6, 2020; on that day, defendant requested to set the matter for an in-person preliminary examination on October 19, 2020. Defendant also concedes that a 40-day delay is attributable to the defense because of his request to adjourn the preliminary examination from February 26, 2021 to April 7, 2021. In addition, as the trial court aptly observed, defendant's motion to quash, which was scheduled for July 8, 2021, had to be adjourned until August 5, 2021, because defendant was unavailable for the entire month of July 2021. There were also delays because defendant's federal detention hold created specific requirements for defendant's transportation to hearings.

Overall, despite defendant's contrary argument, the record shows that both the prosecution and the defense were nearly equally responsible for substantial delays, a large portion of the delay chargeable to the prosecution had a "neutral tint," and that the additional substantial delay was an exceptional matter, COVID-19, and not attributable to the prosecution. Under these circumstances, although this factor technically weighs in favor of defendant, we give little weight to it in determining whether defendant was denied a speedy trial.

With respect to the third factor, the assertion of the speedy-trial right, we look to when defendant asserted this right and when trial took place in relation to the assertion. See *Cain*, 238 Mich App at 113-114. "In order to properly preserve his right to a speedy trial, a defendant must

make a formal demand on the record that he be brought to trial." *People v Rogers*, 35 Mich App 547, 551; 192 NW2d 640 (1970). In this case, there is no dispute that defendant asserted his right to a speedy trial fairly early in this proceeding, so this factor weighs in his favor.

With regard to the fourth factor, there are two types of prejudice: prejudice to the person and prejudice to the defense. *Gilmore*, 222 Mich App at 461-462. The latter prejudice is the more crucial in assessing a speedy-trial claim. *Williams*, 475 Mich at 264. Defendant does not sufficiently argue that his incarceration during the delay prejudiced his person. *Gilmore*, 222 Mich App at 462 (prejudice to the person consists of the deprivation of a defendant's civil liberties). Defendant states that he suffered anxiety, depression, and a physical injury. Preliminarily, regardless of the length of his pretrial incarceration in this case, defendant would still have been incarcerated on two parole holds, one of which was for an unrelated federal case. Furthermore, anxiety alone is insufficient to establish a violation of the right to a speedy trial. *Id*. In addition, defendant has failed to explain how a physical injury, which he suffered sometime before December 7, 2020, was a result of a lengthy pretrial detention because he had been confined for approximately three months by that time.

Further, there is no indication that the delay adversely affected defendant's ability to defend against the charges. Defendant notes that one potential defense witness died March 21, 2021, and that another potential defense witness relocated to an unknown location. But general allegations of prejudice caused by delay, such as the unspecified loss of evidence, are insufficient to show that his defense was affected. *Gilmore*, 222 Mich App at 462; *People v Cooper*, 166 Mich App 638, 655; 421 NW2d 177 (1987). Notably, defendant has not identified any specific beneficial testimony that was lost because of the delay. In sum, defendant has failed to show that any potential witness testimony favorable to the defense, or other exculpatory evidence, was lost because of the delay in bringing him to trial. Consequently, when balancing the relevant factors, we conclude that defendant's right to a speedy trial was not violated.

## III. GANG-RELATED EVIDENCE

In his second claim, defendant argues that the trial court erred by allowing the unredacted parking lot video, which showed that the shooter made a gang-related statement, because the statement was not relevant under MRE 401, and unduly prejudicial under MRE 403. We disagree that defendant is entitled to a new trial on this basis.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Thorpe*, 504 Mich 230, 251-252; 934 NW2d 693 (2019). "The decision to admit evidence is within the trial court's discretion and will not be disturbed unless that decision falls outside the range of principled outcomes." *Id*. at 252 (quotation marks and citation omitted.) "A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Id*. "Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are reviewed de novo[.]" *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. However, even if evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." MRE 403. "A

-4-

trial court admits relevant evidence to provide the trier of fact with as much useful information as possible." *People v Cameron*, 291 Mich App 599, 612; 806 NW2d 371 (2011).  As defendant aptly notes, evidence concerning gang membership, however, is only relevant when there is evidence that the crime is gang-related.  See *People v Bynum*, 496 Mich 610, 625-626; 852 NW2d 570 (2014).  In brief, we agree that, in this case, there was no evidence that the charged offenses against defendant were gang-related.  Thus, evidence of defendant's reference to gang membership during his assault of Williams did not make any fact of consequence more or less probable.

But, even if the trial court abused its discretion by admitting the unredacted video, a preserved nonconstitutional error regarding the admission or exclusion of evidence is presumed to be harmless.  We will only reverse on the basis of a preserved nonconstitutional issue if, " 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999), quoting MCL 769.26.  The defendant bears the burden of demonstrating that such an error resulted in a miscarriage of justice. *Lukity*, 460 Mich at 495.

We disagree with defendant that the unredacted version of the video, which included his one-second utterance of "real Vice Lord," caused his convictions.  Preliminarily, defendant challenges only the trial court's decision to provide the jury with the unredacted video during deliberations.  During trial, the prosecutor played only the redacted version, in which defendant's brief statement was removed.  Subsequently, Williams testified that during the shooting, defendant stated, "Big Vice Lord."  Williams's testimony was the only reference made during trial regarding the Vice Lords.  Defense counsel did not object to Williams's testimony, and defendant raises no challenge to this testimony on appeal.  Thus, defendant has failed to make a logical argument regarding why his gang-related statement on the video was outcome-determinative, but Williams's unchallenged gang-related testimony was not.  Furthermore, as plaintiff aptly observed, defendant's statement on the video was apparently so fleeting that defense counsel informed the trial court that he watched the video "multiple time[s] and did not "pick [the statement] up[.]" Accordingly, under this analysis alone, it does not affirmatively appear more probable than not that the claimed error was outcome-determinative.

Furthermore, contrary to what defendant argues, the admissible evidence was sufficiently compelling to render harmless the admission of the unredacted video.  Williams, who had known defendant for five months, identified defendant as the person who shot her from less than 10 feet away.  There was video evidence showing defendant on the balcony outside of Porter's apartment and showing defendant and Williams aggressively arguing that night.  At times, defendant held a gun, and Williams held a knife.  In addition, there was video evidence that Porter referred to the assailant as LB, and, in a jail call, defendant recorded his own identity on the call as "LB." Williams also testified that defendant used the nickname LB.  Given the admissible evidence, it affirmatively appears that the evidentiary error was harmless.

## IV.  DEFENDANT'S STANDARD 4 BRIEF

Defendant raises an issue of newly discovered evidence in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.  The issue does not have merit.

Because defendant failed to raise his newly discovered evidence claim in a motion for a new trial in the trial court, it is unpreserved. See *People v Darden*, 230 Mich App 597, 605-606; 585 NW2d 27 (1998). We review this unpreserved claim for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 752-753, 763-764; 597 NW2d 130 (1999). An error is plain if it is "clear or obvious." *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018). The defendant bears the burden of establishing entitlement to relief under plain-error review. *Carines*, 460 Mich at 763.

Defendant seeks to establish his "newly discovered" evidence claim with testimony disclosed during a federal trial concerning the Vice Lords gang. Specifically, according to a special agent's testimony, defendant and another gang affiliate both used the nickname "LB." Defendant claims that this testimony would likely absolve him of any culpability in the charged crimes in this case because it raises a doubt as to the shooter's identity.

To obtain a new trial on the basis of newly discovered evidence, a defendant must demonstrate that: (1) the evidence itself, not merely its materiality, is newly discovered; (2) the newly discovered evidence is not merely cumulative; (3) the defendant, exercising reasonable diligence, could not have discovered and produced the evidence at trial; and, (4) the new evidence makes a different result probable on retrial. *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003). The trial court's function in evaluating the credibility of new evidence is "limited" because the trial court "is not the ultimate fact-finder . . . ." *People v Johnson*, 502 Mich 541, 567; 918 NW2d 676 (2018). Rather, because the remedy would be a grant of a new trial, the trial court's function is to decide whether a reasonable juror "could find the testimony credible on retrial." *Id*.

Preliminarily, it is questionable whether the information revealed during the federal trial constitutes newly discovered evidence. In presenting this claim, defendant acknowledges the evidence that he was affiliated with the Vice Lords, so he likely would have known that another member with whom he was on trial also used the nickname "LB." Defendant appears to focus not on the evidence that another Vice Lord affiliate used the nickname, but the fact that a special agent testified to this fact. This does not make the information "newly discovered."

Moreover, the mere fact that some other Vice Lord affiliate also used the nickname LB does not make a different result probable on retrial. As discussed previously, Williams unequivocally identified defendant as the shooter immediately after the incident and at trial. In addition, video evidence captured Porter calling the assailant LB, defendant identified himself as LB during a jail call, and Williams testified that defendant used the nickname LB. There is nothing connecting the other alleged LB to Williams or this shooting. Consequently, defendant has failed to establish plain error, let alone plain error affecting his substantial rights, and, therefore, he is not entitled to a new trial on the basis of newly discovered evidence.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Brock A. Swartzle
/s/ Thomas C. Cameron