PEOPLE v McCLINE

Docket No. 116486. Submitted February 4, 1992, at Detroit. Decided
August 6, 1992; approved for publication January 4, 1993, at
9:05 A.M. Leave to appeal sought.

Donald L. McCline, Jr., was convicted by a jury in the Macomb
Circuit Court of delivery of more than 650 grams of cocaine.
Judge Frederick Balkwill presided during the three days of jury
selection, but after the jury had been selected and sworn, and
over a defense objection, the matter was transferred to Judge
Frank E. Jeannette, who presided over the remainder of the
trial. The defendant appealed.

The Court of Appeals *held:*

1. A defendant is entitled to a new trial if, after voir dire has
begun, there is a substitution of the trial judge for any reason
other than the disability of the judge. The defendant need not
show prejudice arising out of the substitution. Because the
substitution in this case was made over a defense objection and
there is no support for a conclusion that the substitution was a
result of any disability of Judge Balkwill, the defendant was
deprived of his constitutional right to a jury trial and is
entitled to a new trial.

2. The trial court abused its discretion in admitting, over
objection, a shotgun that was found in the trunk of the defen-
dant's car and jewelry that he was wearing at the time of his
arrest. Neither of these items was relevant to prove the
charged crime.

3. The defendant was not denied a speedy trial. Much of the
twenty-one-month delay was attributable to the defendant. The
delay was not unreasonable.

4. The trial court's remarks during voir dire relative to the
defendant's right to remain silent did not infringe on the
defendant's exercise of that right.

5. The prosecutor's comments regarding a codefendant's fail-
ure to take the stand does not entitle the defendant to a new
trial.

Conviction vacated and case remanded for a new trial.

REFERENCES

Am Jur 2d, New Trial § 109; Trial §§ 221, 222.
Substitution of judge in criminal case. 83 ALR2d 1032.

Jansen, J., dissenting, stated that if the substitution of judges occurs during the preliminary stages of a trial and before opening arguments and introduction of any evidence, the defendant should be required to show how the substitution resulted in prejudice. Because the substitution in this case took place before counsel made opening statements and 'there was no showing of prejudice, the substitution did not result in a miscarriage of justice requiring a new trial.

Criminal Law — Trial — Judges — Substitution of Judges.

A defendant is entitled to a new trial where, after voir dire has begun, there is· a substitution of the trial judge over the objection of the defendant and the substitution is for any reason other than the disability of the judge; the defendant need not show prejudice arising out of the substitution (MCR 2.630).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Carl J. Marlinga,* Prosecuting Attorney, and *Edward L. Graham,* Assistant Prosecuting Attorney, for the people.

*Michael J. Brady,* for the defendant.

Before: Wahls, P.J., and Jansen and T. G. Kavanagh,* JJ.

Per Curiam. Defendant appeals as of right from his conviction, following a jury trial, of delivery of more than 650 grams of cocaine, MCL 333.7401(2) (a)(i); MSA 14.15(7401)(2)(a)(i). On January 4, 1989, defendant received the statutorily mandated sentence of life imprisonment without possibility of parole.

Defendant's conviction arises out of the sale of a kilogram of cocaine to undercover police officers and his subsequent arrest on March 15, 1987. Defendant was tried jointly with his two codefen-

* Former Supreme Court justice, sitting on the Court of Appeals by assignment.

dants.[1] Macomb Circuit Judge Frederick Balkwill presided over three days of jury selection, which began on November 29, 1988. After a panel had been selected and sworn, and over the objections of all defendants, the matter was transferred to visiting Judge Frank Jeannette.[2] Judge Jeannette then presided over the remainder of the trial.

The defendant's first issue addresses his entitle-

---

[1] The appeals of the codefendants, Charles Lewis, III, and Dale Scott Johnson, are currently pending before this Court.

[2] Judge Balkwill, after notifying the jury of the transfer of the matter to Judge Jeannette, offered the following explanation:

*The Court*: For the record, I discussed the matter with the chief judge, the Honorable George Deneweth, who's approved this.

Anything else?

*Mr. Johnston* [*codefendant Johnson's counsel*]: One other matter, your Honor. I'm sure I'm speaking for everyone when I say that I think we're somewhat surprised by the decision to transfer this case to Judge Jeannette. Would the Court enunciate briefly for the record the reason for that decision?

*The Court*: The chief judge has indicated that Judge Jeannette has been brought back to handle cases that are over 180 days to permit the regular courts to clear up the dockets, and the chief judge has determined that this case being over 180 days is one of the cases that Judge Jeannette could hear. He's determined, based on the case log [sic], that one judge can pick a jury and another judge can hear the trial.

* * *

*Mr. Freers* [*defendant's counsel*]: Your Honor, I would state for the record, and I don't know how other counsel feel, but I feel that we should at least have been advised of this possibility because when I pick a jury, one of the things I certainly consider is the judge who's going to try the case, and I feel that had Judge Jeannette—had I known Judge Jeannette would have been the judge, I would have made some different decisions if the voir dire process continued. Thank you, your Honor.

*Mr. Bufalino* [*codefendant Lewis' counsel*]: I join in all of the objections, your Honor. It was my understanding that Judge Jeannette was appointed to begin on December 6th, and I'm curious as to the background of the change, if I'm in fact correct, that he was to start December 6th, I would like to know the timing of this decision and the reason that we are the last to know.

*The Court*: Okay. Thank you. I appreciate that. Thank you.

*Mr. Freers*: Are we also to report to the fourth floor?

*The Court*: That's correct. Judge Jeannette is waiting for you.

ment to a jury trial presided over by the same judge from preliminary matters to the rendering of a verdict and sentencing. The seminal case in this area of the law is the Second Circuit Court of Appeals decision in *Freeman v United States*, 227 F 732 (CA 2, 1915). There, the trial judge had been replaced by another judge after the close of the prosecutor's case, which involved 106 witnesses. After an extensive exploration of the history underlying the constitutional rights to a jury and to due process, the Court held:

> It is the opinion of this court that in a criminal case trial by jury means trial by a tribunal consisting of at least one judge and twelve jurors, all of whom must remain identical from the beginning to the end. It is not possible for either the government or the accused, or for both, to consent to a substitution either of one judge for another judge, or of one juror for another juror. The continuous presence of the same judge and jury is equally essential throughout the whole of the trial. [*Id.* at 759-760.]

Most cases have refused to apply *Freeman* to those instances where the substitution has occurred before any evidence was introduced. The older view held that substitution of judges before the introduction of evidence was permissible, with the underlying theory "apparently being that the rule against substitution is designed to insure that the judge who hears the testimony as to the facts also applies the law thereto." Anno: *Substitution of judge in criminal case*, 83 ALR2d 1032, 1034. Most of the more recent cases involving this area of the law seem to agree with the conclusion that substitution of trial judges at the conclusion of voir dire, but before opening arguments or the admission of evidence, requires that the defendant

show prejudice to constitute error requiring rever-
sal.[3]

We agree with those decisions that have found
that a criminal trial is an entity, consisting of one
judge and one jury panel throughout the proceed-
ings. See *Freeman, supra; Yates v United States,*
227 F2d 844, 846-847 (CA 9, 1955). We also agree
that the jury selection process is an important and
integral part of a criminal trial. See *Gomez v
United States,* 490 US 858, 873; 109 S Ct 2237; 104
L Ed 2d 923 (1989). During a criminal trial, the
jury plays what is undoubtedly the most important
role in the determination of the defendant's guilt
or innocence. The questions asked at voir dire, at
the discretion of the presiding judge, enable both
the prosecution and the defendant to attempt to
find an impartial jury oriented toward the deter-
mination of the truth. While no manifest or tangi-
ble prejudice certainly results from a jury fairly
picked before a second judge, we believe that a
subtle or intangible prejudice may result.

Accordingly, we reject any test requiring that
the defendant show prejudice to be entitled to
appellate relief. Requiring the defendant to show
prejudice when deprived of a right that is so
fundamental to our system of justice unduly bur-
dens the defendant and works to the detriment of
the system. Instead, we require that the defendant
simply show that a substitution was made, after
voir dire had begun, for a reason other than those
enumerated in MCR 2.630.

Such a case is presented here. After three days
of jury selection, a change of judge took place over
the objections of defendant. There is nothing in

___

[3] See, e. g., *State v Rodriguez,* 786 P2d 472 (Colo App, 1989); *State v
Amarillas,* 141 Ariz 620; 688 P2d 628 (1984); *State v Wallen,* 114 Ariz
App 355; 560 P2d 1262 (1977); *Jones v State,* 57 Ala App 275; 327 So
2d 913 (1976), cert den 295 Ala 409 (1976); *Bellah v State,* 415 SW2d
418, 420 (Tex Crim App, 1967).

this record that even inferentially supports a conclusion that the substitution was made because of any disability of Judge Balkwill. Accordingly, we conclude that defendant was deprived of his constitutional right to a jury trial, and we remand this matter for a new trial.

Given our disposition of defendant's first issue, we will not fully address all the remaining issues on appeal. However, we will briefly discuss some that may again present themselves during the retrial of this matter.

Defendant also argues that the trial court abused its discretion in admitting, over objection, a shotgun that was found in the trunk of his car[4] and jewelry that he was wearing at the time of his arrest.[5]

---

[4] In objecting to the admission of the shotgun, defendant asserted outside the presence of the jury that it was not relevant, because it had not been used or present at the time of the drug transaction. The prosecutor, in turn, argued that the weapon, because of its particular character, was relevant, stating:

> *Mr. Kaiser* [*the prosecutor*]: In a drug deal such as this, one has this weapon because it's small and it's easily concealed and it's very handy in aiding the person in protecting the drugs against ripoffs [sic]. I believe it's relevant and material as to Mr. McCline [defendant].

The prosecutor sought the admission of the shotgun in the presence of the jury, and the trial court admitted it with respect to the prosecution of the defendant only.

[5] At the time he was arrested, defendant was wearing a Seiko wristwatch; a gold medallion imprinted with an outline of the continent of Africa, containing a diamond in the center; a gold bracelet; and a large gold ring. The following colloquy ensued at the time the prosecutor sought to introduce the jewelry into evidence:

> *Mr. Kaiser*: Now, Exhibit 10, that's the jewelry and that's only being offered as to Mr. McCline.
> *Mr. Freers* [*defense counsel*]: I'll object to the entry of that evidence as its being irrelevant and immaterial to this case.
> *Mr. Kaiser*: Well, with all due respect to Mr. McCline and his Counsel, but we know where that came from and Mr. McCline is a drug dealer and makes a lot of money living off of drugs and dealing drugs for $36,000.

The admission of evidence lies within the sound discretion of the trial court. This Court will find an abuse of discretion only if an unprejudiced person, considering the facts on which the trial court relied in making its decision, would conclude that there was no justification for the ruling made. *People v Rockwell*, 188 Mich App 405, 410; 470 NW2d 673 (1991). We would find such an abuse of discretion in the trial court's admission of both the shotgun and the jewelry in this matter.

Generally, relevant evidence is admissible. MRE 402. Evidence is relevant if it tends to make a fact in issue more probable or less probable than it would be without the evidence. MRE 401; *People v Milton*, 186 Mich App 574, 576; 465 NW2d 371 (1990), remanded for consideration of a new issue 438 Mich 852 (1991). We cannot conclude that evidence of a shotgun, found in the trunk of defendant's vehicle some distance away from the scene of the drug transaction, was relevant to the determination whether defendant delivered cocaine to an undercover officer. Similarly, we cannot conclude that evidence of defendant's jewelry, no matter its cost and appearance, was relevant to the drug transaction that is at the core of this case. Because we conclude that neither was relevant, we find that the trial court abused its discretion in admitting the shotgun and the jewelry into evidence.

*The Court*: The jury will disregard that. Come close to the case, Mr. Kaiser. Let's confine ourselves to the evidence in the case.

*Mr. Kaiser*: Yes, and we believe it's relative as to Mr. McCline's occupation.

*Mr. Freers*: Your Honor, if everybody who wore jewelry was a drug dealer here, there would be a lot of people in trouble.

*Mr. Kaiser*: We don't want to make any bold allegations.

*The Court*: Members of the jury, I'm instructing you that this applies—this is the jewelry that was found on Mr. McCline's person and this applies to Mr. McCline.

We reject defendant's claim that he was denied his right to a speedy trial. Utilizing the four-part balancing test of *Barker v Wingo,* 407 US 514, 530; 92 S Ct 2182; 33 L Ed 2d 101 (1972), which has been adopted by the courts of this state to review speedy trial claims, we conclude that defendant was not denied his right to a speedy trial. *People v Collins,* 388 Mich 680, 690; 202 NW2d 769 (1972); *People v O'Quinn,* 185 Mich App 40, 47-48; 460 NW2d 264 (1990). Although the delay between defendant's arrest and the commencement of trial was nearly twenty-one months, thus shifting to the prosecutor the burden of proof that the defendant has not been prejudiced, *Collins, supra* at 690, much of the delay was attributable to defendant or, if attributed to the prosecutor, was given minimal weight and a neutral tint. See *People v Holland,* 179 Mich App 184, 195; 445 NW2d 206 (1989); *People v Cooper,* 166 Mich App 638, 654; 421 NW2d 177 (1987). Similarly, the fact that defendant was tried with two codefendants makes any delay more tolerable to this Court. *Id.,* at 655. Because the delay was not unreasonable, defendant was not denied his right to a speedy trial. See *Holland, supra* at 195.

We summarily reject defendant's claim that the trial court's characterization during voir dire of his right to remain silent infringed upon his exercise of that right. The trial court's comments did not imply that defendant would incriminate himself if he testified. Similarly, we hold that the comments of the prosecutor regarding a codefendant's failure to take the stand do not entitle defendant to a new trial.

Given our resolution of this matter, we decline to address defendant's claims that the sentence imposed for his conviction constitutes cruel and

unusual punishment under either the United States or the Michigan Constitution.

Defendant's conviction is vacated and this matter is remanded for a new trial.

JANSEN, J. *(dissenting).* I respectfully dissent. I would hold that when the substitution of judges occurs during the preliminary stages of the trial before any evidence has been received, the defendant should be required to show how the substitution resulted in prejudice.

In the present case, Judge Balkwill presided over three days of jury selection. After the panel was selected and sworn, and over the objections of defendants, the case was transferred to Judge Jeannette. Judge Jeannette presided over the remainder of the trial. Defendant contends that the substitution deprived him of his constitutional rights to a trial by jury and to due process of law. I disagree.

In *Freeman v United States,* 227 F 732 (CA 2, 1915), one judge was substituted for another after all the government's witnesses had testified. The Second Circuit Court of Appeals reversed the defendant's conviction and established a general rule that prohibits the substitution of a judge during the course of a criminal trial after a jury has been sworn and evidence adduced, but before the verdict. *Id.* The general rule is that it is error requiring reversal to substitute a judge to preside over the remainder of a trial in which evidence was adduced while the original judge was presiding. *State v McClain,* 194 La 605, 613-614; 194 So 563 (1940); *Commonwealth v Thompson,* 328 Pa 27, 29; 195 A 115 (1937); *State v Johnson,* 55 Wash 2d 594, 596; 349 P2d 227 (1960).

The theory behind the general rule is that the second or substituted judge, not being familiar

with the prior testimony or evidence, is not in a position to give the accused a fair and impartial trial as contemplated under the law. *McClain, supra* at 614. The only judge competent to instruct the jury is the one who heard the testimony, observed the demeanor of the witnesses and had an opportunity to form an opinion with respect to their credibility, and knows something about the "atmosphere" of the case. *Thompson, supra* at 29. Another judge, without knowledge of such matters taking place during the trial and with no possibility of learning from the record all the attendant circumstances of the trial, is not qualified to properly charge the jury. *Id.*

At other stages of trial, a different rule exists. *Id.* at 30. In *Thompson,* an exception to the general rule was recognized for the substitution of a judge occurring during the selection of the jury. *Id.; McClain, supra* at 614. The examination of jurors during voir dire does not elicit any information that can be used in the trial of the case; rather, such examination is merely for the purpose of securing a competent, fair, and unprejudiced jury. That function can be properly performed by any judge. *Thompson, supra* at 31; *McClain, supra* at 614; *Johnson, supra* at 596.

The exception to the rule is premised on the ground that the selection of and the swearing in of the jurors is solely for the purpose of securing a competent and fair jury, and has nothing to do with the evidence tending to show guilt or innocence. *McClain, supra* at 614. A substitution of judges in the preliminary stages of a trial properly may be made before any evidence is received, the theory being that the rule against substitution is designed to ensure that the judge who hears the testimony concerning the facts also applies the law thereto. *Jones v State,* 57 Ala App 275, 277; 327 So

2d 913 (1975), cert den 295 Ala 409 (1976); *State v Rodriguez,* 786 P2d 472, 473 (Colo App, 1989).

In my opinion, it is clear that the substitution of a judge after the jury has been sworn but before any evidence has been presented does not involve the problems to which the general rule is directed. The substitution of judges in the present case occurred after the jury was sworn, but before counsel's opening statements, and before the introduction of any evidence or the taking of any testimony. The entire case, from the opening statements to the rendition of the verdict, was heard by Judge Jeannette. He heard all the testimony, and there is no claim by defendant that Judge Jeannette was somehow unfamiliar with the facts and circumstances of the case. Under these circumstances, I cannot see how defendant was prejudiced or how a miscarriage of justice resulted.

Defendant alleges that the reassignment from Judge Balkwill to Judge Jeannette interfered with his right to an impartial jury because he chose the jury in relation to the judge presiding during jury selection. Defense counsel objected to the substitution, arguing that, had he known Judge Jeannette would be presiding at trial, he would have made different decisions during the voir dire process. I do not believe that this rises to the level of prejudice or miscarriage of justice sufficient to warrant reversal. As noted in *Thompson,* "[t]he examination of jurors under voir dire does not elicit any information that can be used in the trial of the case; such examination is merely for the purpose of securing a competent, fair, and unprejudiced jury. That function can be properly performed by any judge." *Thompson, supra* at 31.

I would hold that, in the absence of a showing of prejudice by the defendant, the substitution of trial judges before opening arguments and the

introduction of any evidence does not constitute error requiring reversal. I believe such a result is consistent with MCL 769.26; MSA 28.1096, which provides:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

I am of the opinion that the statute supports the conclusion that in circumstances such as those in the present case, a defendant must establish prejudice by the substitution of one judge for another when the substitution occurs before the opening statements of counsel and the introduction of evidence. In the present case, the substitution occurred before counsel made his opening statements, and the second judge, Judge Jeannette, presided over the remainder of the trial, heard all the testimony, and was familiar with the case.

I would conclude that defendant was in no way prejudiced by the substitution of judges following jury selection but before the opening statements of counsel and the presentation of evidence. The substitution did not result in a miscarriage of justice, and defendant's substantial rights were not prejudiced.