PEOPLE v McCLINE

Docket No. 94614. Decided April 16, 1993. On application by the people for leave to appeal, the Supreme Court, in lieu of granting leave, vacated the judgment of the Court of Appeals and remanded the case to the Court of Appeals for further proceedings.

Donald L. McCline, Jr., was convicted by a jury in the Macomb Circuit Court, Frank Jeannette, J., of delivering more than 650 grams of cocaine. The Court of Appeals, WAHLS, P.J., and T. G. KAVANAGH, J. (JANSEN, J., dissenting), reversed in an opinion per curiam, finding that a substitution of judges after jury selection was improper because of the possibility of subtle or intangible prejudice, and concluded that the defendant was deprived of his constitutional right to a jury trial (Docket No. 116486). The people seek leave to appeal.

In an opinion per curiam, signed by Chief Justice CAVANAGH, and Justices BRICKLEY, BOYLE, RILEY, GRIFFIN, and MALLETT, the Supreme Court held:

The defendant was not prejudiced by the substitution of judges, and his conviction should not have been reversed.

1. It is preferable that a single judge preside over all aspects of a trial to insure that the judge who hears the testimony regarding the facts also applies the law. However, substitution of a judge before opening argument or the admission of evidence is not an automatic ground for reversal.

2. Because the substitution in this case took place before opening argument or the introduction of any testimony, and because the defendant demonstrated no prejudice, the judgment of the Court of Appeals must be vacated.

Vacated and remanded.

Justice LEVIN would grant leave to appeal and dissented from the peremptory reversal of the Court of Appeals.

197 Mich App 711; 496 NW2d 296 (1992) vacated.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Carl J. Marlinga,* Prosecuting Attorney, *Edward L. Graham,* Assistant

Prosecuting Attorney, and *Robert J. Berlin*, Chief
Appellate Attorney, for the people.

PER CURIAM. Early in the defendant's jury trial,
before any testimony was taken, a new judge was
substituted. The Court of Appeals found the substitution to be reversible error. Because the defendant was not prejudiced by this substitution, his
conviction should not have been reversed. We
vacate the judgment of the Court of Appeals and
remand this case to the Court of Appeals for
further consideration of the defendant's remaining
issues.

I

A jury convicted the defendant of delivering
more than 650 grams of cocaine.[1] He is serving a
life term of imprisonment.

This case was originally assigned to Macomb
Circuit Judge Frederick D. Balkwill, who presided
during the proceedings that took place before trial.
Judge Balkwill also conducted the jury selection,
which took three days.

After the jury had been selected and instructed
regarding its duties, Judge Balkwill announced to
the jury that the remainder of the case would be
heard by retired Macomb Circuit Judge Frank E.
Jeannette. The jurors were asked to go upstairs to
the courtroom occupied by Judge Jeannette.

When the jury had left Judge Balkwill's courtroom, the attorney for a codefendant expressed
surprise and asked Judge Balkwill to explain the
change. Judge Balkwill responded:

> The chief judge has indicated that Judge Jeannette has been brought back to handle cases that

---

[1] MCL 333.7401(1), (2)(a)(i); MSA 14.15(7401)(1), (2)(a)(i).

are over 180 days to permit the regular courts to
clear up the dockets, and the chief judge has
determined that this case being over 180 days is
one of the cases that Judge Jeannette could hear.
He's determined, based on the case log, that one
judge can pick a jury and another judge can hear
the trial.

The defendant's attorney then complained of the
lack of notice. The objections were joined by coun-
sel for a second codefendant, who asked why the
defense attorneys were "the last to know." The
defense objections were renewed the following day.

Judge Jeannette then presided over the defen-
dant's trial, received the jury's verdict, and im-
posed the life sentence.[2]

The Court of Appeals reversed the defendant's
conviction, finding the transfer to have been im-
proper. *People v McCline,* 197 Mich App 711; 496
NW2d 296 (1992). Judge JANSEN dissented.

The prosecutor has applied to this Court for
leave to appeal.

II

In reversing the defendant's conviction, the
Court of Appeals relied primarily upon *Freeman v
United States,* 227 F 732, 741-760 (CA 2, 1915),
where the Second Circuit characterized "[t]he con-
tinuous presence of the same judge" as essential:

It is the opinion of this court that in a criminal
case trial by jury means trial by a tribunal consist-
ing of at least one judge and twelve jurors, all of
whom must remain identical from the beginning
to the end. It is not possible for either the govern-
ment or the accused, or both, to consent to a

[2] Later, Judge Balkwill entered orders appointing appellate counsel
for the defendant.

substitution either of one judge for another judge, or of one juror for another juror. The continuous presence of the same judge and jury is equally essential throughout the whole of the trial. [*Freeman,* 227 F 759-760.]

In the present case, the Court of Appeals acknowledged that "[m]ost cases have refused to apply *Freeman* to those instances where the substitution has occurred before any evidence was introduced." The panel also noted that, "[m]ost of the more recent cases involving this area of the law seem to agree with the conclusion that substitution of trial judges at the conclusion of voir dire, but before opening arguments or the admission of evidence, requires that the defendant show prejudice to constitute error requiring reversal." 197 Mich App 714-715.

Despite the preponderance of contrary authority, the majority reversed because of the possibility of "subtle or intangible prejudice . . . ." *Id.* at 715. The majority held that reversal is required if a substitution was made after the beginning of voir dire, except as provided in MCR 2.630.[3] Because there was no indication that Judge Balkwill had become disabled, the majority concluded that the defendant was "deprived of his constitutional right to a jury trial . . . ." *Id.* at 716.

---

[3] If, after a verdict is returned or findings of fact and conclusions of law are filed, the judge before whom an action has been tried is unable to perform the duties prescribed by these rules because of death, illness, or other disability, another judge regularly sitting in or assigned to the court in which the action was tried may perform those duties. However, if the substitute judge is not satisfied that he or she can do so, the substitute judge may grant a new trial. [MCR 2.630.]

See also MCR 6.440, which concerns death, sickness, or other disability of a judge during a criminal matter, and MCR 8.111(C), which governs reassignments where a judge is disqualified or for other good reason cannot undertake an assigned case.

In dissent, Judge JANSEN explained the general rule and its recognized exceptions:

> The general rule is that it is error requiring reversal to substitute a judge to preside over the remainder of a trial in which evidence was adduced while the original judge was presiding. *State v McClain*, 194 La 605, 613-614; 194 So 563 (1940); *Commonwealth v Thompson*, 328 Pa 27, 29; 195 A 115 (1937); *State v Johnson*, 55 Wash 2d 594, 596; 349 P2d 227 (1960).
>
> The theory behind the general rule is that the second or substituted judge, not being familiar with the prior testimony or evidence, is not in a position to give the accused a fair and impartial trial as contemplated under the law. *McClain, supra* at 614. The only judge competent to instruct the jury is the one who heard the testimony, observed the demeanor of the witnesses and had an opportunity to form an opinion with respect to their credibility, and knows something about the "atmosphere" of the case. *Thompson, supra* at 29. Another judge, without knowledge of such matters taking place during the trial and with no possibility of learning from the record all the attendant circumstances of the trial, is not qualified to properly charge the jury. *Id.*
>
> At other stages of trial, a different rule exists. *Id.* at 30. In *Thompson,* an exception to the general rule was recognized for the substitution of a judge occurring during the selection of the jury. *Id.; McClain, supra* at 614. The examination of jurors during voir dire does not elicit any information that can be used in the trial of the case; rather, such examination is merely for the purpose of securing a competent, fair, and unprejudiced jury. That function can be properly performed by any judge. *Thompson, supra* at 31; *McClain, supra* at 614; *Johnson, supra* at 596. [*Id.* at 719-720.]

In light of the harmless error rule,[4] Judge
JANSEN concluded that "in circumstances such as
those in the present case, a defendant must estab-
lish prejudice by the substitution of one judge for
another when the substitution occurs before the
opening statements of counsel and the introduc-
tion of evidence." *Id.* at 722. Because Judge Jean-
nette heard "[t]he entire case, from the opening
statements to the rendition of the verdict," Judge
JANSEN could see no prejudice to the defendant.[5]
*Id.* at 721.

### III

As the Court of Appeals majority acknowledged,
the great weight of authority favors the rule that
substitution of a judge before opening argument or
the admission of evidence is not an automatic
ground for reversal.[6] While "it is not the best
practice to have a substitute judge preside over
part of an ongoing trial,"[7] "the rule against substi-
tution is designed to insure that the judge who
hears the testimony as to the facts also applies the
law thereto."[8]

We thus agree with the analysis provided by the
Washington Supreme Court in *State v Johnson,*
*supra* at 596:

---

[4] MCR 2.613; MCL 769.26; MSA 28.1096.

[5] Judge JANSEN noted defense counsel's statement to Judge Balkwill
that he might have handled jury selection differently if he had known
that the case would be tried before a different judge. Judge JANSEN
said that these concerns do not rise to the level of prejudice or
miscarriage of justice sufficient to warrant reversal.

[6] *People v Rodriguez,* 786 P2d 472, 473 (Colo App, 1989), *State v
Amarillas,* 141 Ariz 620, 622; 688 P2d 628 (1984), *State v Wallen,* 114
Ariz 355, 359; 560 P2d 1262 (Ariz App, 1977), *Jones v State,* 327 So 2d
913, 914-915 (Ala Crim App, 1975), and *Bellah v State,* 415 SW2d 418,
420 (Tex Crim App, 1967).

[7] *Amarillas,* n 6 *supra.*

[8] Anno: *Substitution of judge in criminal case,* 83 ALR2d 1032,
1034.

The second assignment of error presents a new question in this jurisdiction. The general rule, as stated by the appellant in his brief, is that a judge may not be substituted to preside over the remainder of a trial after evidence has been adduced before the original judge. The leading case is *Commonwealth v Thompson,* 328 Pa 27; 195 A 115; 114 ALR 432.

As a rule, a judge cannot finish the performance of a duty already entered upon by his predecessor where that duty involves the exercise of judgment and the application of legal knowledge to, and judicial deliberation of, facts known only to the predecessor. *Durden v People,* 192 Ill 493; 61 NE 317 [1901]; *Commonwealth v Thompson, supra;* 30 Am Jur 25, § 39.

It immediately is apparent that the substitution of a judge after the jury has been sworn but before any evidence has been taken, does not involve this objection. As was said in *Commonwealth v Thompson, supra,* the examination of jurors under voir dire does not elicit any information that can be used in the trial of the case. Such examination is merely for the purpose of securing a competent, fair, and unprejudiced jury. That function can be performed properly by any judge, but after a jury is selected and sworn, a different situation arises.[9]

In the present case, the Court of Appeals relied on *Freeman,* but that 1915 decision is readily distinguishable. Well along in a four-month trial,

---

[9] In *Johnson,* the court further explained:

In this case, the state had made its opening statement when the judge was substituted. However, that statement was repeated in the presence of the substitute judge. That statement is not evidence, and it is not contended that the first judge was called upon to make any ruling during the course of the opening statement which affected the later conduct of the trial. Nor, for that matter, is it contended that the appellant was in any way prejudiced by the substitution of judges. The substitution did not offend the general rule relied upon by the appellant, and was not reversible error. [55 Wash 2d 596-597.]

after the prosecution had introduced the testimony of 106 witnesses and had rested its case, a new judge was substituted. It was in that procedural context that the Second Circuit said that the "continuous presence of the same judge" is essential.

It is far preferable that a single judge preside over all aspects of a trial. For the reasons stated above, though, we agree that a substitution following voir dire, and before opening statements or the introduction of proof, is not a ground for automatic reversal.[10] Because the substitution in this case took place before opening argument or the introduction of any testimony, and because the defendant has demonstrated no prejudice, we set aside the judgment of the Court of Appeals.

IV

In deciding the defendant's appeal, the Court of Appeals found that the trial court had made an erroneous evidentiary ruling. However, the Court of Appeals did not (in light of its holding with regard to the main issue) reach the question whether the error warranted reversal or was harmless. The Court of Appeals also declined to address the defendant's claims regarding his sentence.

We therefore vacate the judgment of the Court of Appeals and remand this case to the Court of Appeals for further consideration of the evidentiary issue, and for disposition of the defendant's sentencing issue. MCR 7.302(F)(1).

CAVANAGH, C.J., and BRICKLEY, BOYLE, RILEY, GRIFFIN, and MALLETT, JJ., concurred.

---

[10] As we have observed in the past, rules of automatic reversal are disfavored. *People v Mosko,* 441 Mich 496, 502; 495 NW2d 534 (1992); *People v France,* 436 Mich 138, 161; 461 NW2d 621 (1990).

LEVIN, J. I would grant leave to appeal, and dissent from the peremptory reversal of the Court of Appeals.