# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RUSSELL JOSEPH GERMANO,

        Defendant-Appellant.

UNPUBLISHED
February 24, 2015

No. 318566
Wayne Circuit Court
LC No. 13-003496-FH

Before: SERVITTO, P.J., and STEPHENS and M. J. KELLY, JJ.

PER CURIAM.

Defendant Russell Joseph Germano appeals by right his jury convictions of torture, MCL 750.85, unlawful imprisonment, MCL 750.349b, and felonious assault, MCL 750.82. The trial court sentenced him to serve 13 to 20 years in prison for the torture conviction, to serve 4 to 15 years in prison for the unlawful imprisonment conviction, and to serve one to four years in prison for the felonious assault conviction. Because we conclude there were no errors warranting relief, we affirm.

Germano first argues that there was insufficient evidence for a rational jury to convict him of torture. Specifically, he contends that there was no evidence that Joseph Cox suffered an injury when he put Cox's hand into a bucket of water with a submerged extension cord. He further maintains that there was also no evidence Cox experienced severe mental pain or suffering as a result of the incident.

When reviewing a challenge to the sufficiency of the evidence, this Court reviews the record evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009).

In order to convict Germano of torturing Cox, the prosecution had to prove that Germano intended "to cause cruel or extreme physical or mental pain and suffering" to Cox, inflicted "great bodily injury or severe mental pain or suffering" upon Cox, and did so while Cox was in Germano's "custody or physical control . . . ." MCL 750.85(1). There is no evidence that Germano and his codefendant, Cody Smith, caused great bodily injury to Cox as that term is defined under MCL 750.85(2)(c). As such, the issue on appeal is whether there was evidence from which a reasonable jury could find that Germano intended to cause Cox cruel or extreme severe mental pain or suffering and actually caused him to suffer severe mental pain or suffering.

-1-

The legislature defined the term "[c]ruel" to mean "brutal, inhuman, sadistic, or that which torments." MCL 750.85(2)(a). "Severe mental pain or suffering" means "a mental injury that results in a substantial alteration of mental functioning that is manifested in a visibly demonstrable manner caused by or resulting from any of the following:"

(*i*) The intentional infliction or threatened infliction of great bodily injury.

(*ii*) The administration or application, or threatened administration or application, or mind-altering substances or other procedures calculated to disrupt the senses or the personality.

(*iii*) The threat of imminent death.

(*iv*) The threat that another person will imminently be subjected to death, great bodily injury, or the administration or application of mind-altering substances or other procedures calculated to disrupt the senses or personality. [MCL 750.85(2)(d).]

Cox testified that when Germano dipped his hand into the bucket of water with the extension cord, he feared that he was going to die. Cox also stated that he considered jumping from his second story window in order to escape Germano and Smith. Cox reported the attack to a police officer shortly afterward and the officer testified that Cox was teary-eyed and emotional; he stated that Cox's eyes appeared bloodshot and that he had to calm Cox down before he could take the report. Although the prosecution did not present any medical evidence regarding Cox's mental injury, taking the evidence in the light most favorable to the prosecution, a rational jury could have concluded that Cox did, in fact, experience severe mental pain or suffering. Germano confronted Cox with the threat of imminent death under MCL 750.85(2)(d)(*iii*) or the threat of great bodily injury under MCL 750.85(2)(d)(*i*) when he placed Cox's hand in the water with the extension cord. There was no evidence that Germano knew or believed the extension cord could not harm Cox. Further, Cox stated that he was so traumatized by the incident that he could no longer bear to live in the apartment, and was forced to move. Cox testified that he believed he was going to die, and the officer's testimony established that Cox's mental anguish was visible within the meaning of MCL 750.85(2)(d). There was sufficient evidence to support the jury's finding that Germano tortured Cox. *Roper*, 286 Mich App at 83.

In a brief submitted on his own behalf, Germano argues that the trial court impermissibly abandoned the bench during the trial and illegally reassigned the case to another judge without a written order or good cause. Specifically, he maintains the trial court violated the court rules when it asked another judge to take the jury's verdict.

After the trial court sent the jury for deliberations, it informed the parties that it would be out of the building later in the day and that a different judge would "take the verdict or handle any questions that come up . . . ." Germano's lawyer did not object to the trial court's handling of the situation. Accordingly, this claim of error is unpreserved. This Court reviews unpreserved claims of error for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). In order to warrant relief, Germano

-2-

must demonstrate that the trial court made an obvious error and that the error affected the outcome of the lower court proceedings. *Id.* at 763.

Generally, "a judge cannot finish the performance of a duty already entered upon by his predecessor where that duty involves the exercise of judgment and the application of legal knowledge to, and judicial deliberation of, facts known only to the predecessor." *People v McCline*, 442 Mich 127, 133; 499 NW2d 341 (1993) (quotation marks and citation omitted). There are circumstances when a judge may be substituted for another after trial begins, but the substitution must meet certain criteria. See MCR 6.440(A); MCR 8.111(C). But a trial court's failure to comply with these procedures does not automatically warrant a new trial; rather, the defendant must demonstrate that the reassignment of trial court judges prejudiced him or her. *People v Bell*, 209 Mich App 273, 275; 530 NW2d 167 (1995).

In this case, Judge Parker presided over jury selection, opening statements, the trial, closing arguments, and the charging of the jury. After the jury was sent to deliberate, Judge Parker noted that she had to leave and stated that she had arranged for Judge Ewell to "take the verdict or handle any questions that come up . . . ." Approximately two hours later, Judge Ewell took the jury's verdict and polled the jurors; beyond that, Judge Ewell had no involvement in the case. Given this record, even assuming that Judge Parker failed to follow the court rules when she arranged for Judge Ewell to take the verdict, Germano has failed to show that the substitution had any effect—let alone prejudicial effect—on the proceedings. Judge Ewell did not make any rulings and was only on the record for approximately five minutes while the verdict was read and the jurors polled. A defendant cannot demonstrate prejudice where the substituting judge "did nothing that required his presence at the trial and did not make any decision that was dependent in any way on any information presented during the trial." *People v Wilson*, 265 Mich App 386, 390; 695 NW2d 351 (2005). Because Germano has not demonstrated that he was prejudiced by Judge Ewell taking the bench in this case, he is not entitled to a new trial.

Germano also argues that his trial lawyer did not provide effective assistance. Specifically, he contends that his lawyer failed to investigate and produce several pieces of exonerating evidence. Because the trial court did not hold an evidentiary hearing on this claim of error, our review is limited to mistakes that are apparent on the record. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), vacated not in relevant part 493 Mich 864.

In order to establish ineffective assistance warranting relief, Germano must demonstrate that his lawyer's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for the acts or omissions, the result of the proceeding would have been different. *Id.* at 22. He must also overcome the strong presumption that his lawyer's acts or omissions constituted sound strategy. See *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). "Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to 'affirmatively entertain the range of possible' reasons that counsel may have had for proceeding as he or she did." *Gioglio*, 296 Mich App at 22. We must conclude that Germano's lawyer's acts or omissions "fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to [us], there might have been a legitimate strategic reason for the act or omission." *Id.* at 22-23.

-3-

Germano argues that his lawyer failed to investigate evidence that would have undermined Cox's credibility; specifically, he contends that his lawyer should have produced evidence regarding Cox's phone records to prove that he and Smith never robbed Harbor Freight and that Cox never called the police department. However, Cox testified at trial that he called Harbor Freight, not the police department, to warn about Germano and Smith's plan to rob the store. Further, there was no testimony that they actually robbed Harbor Freight, nor is it apparent how that fact would be relevant to Germano's guilt. Because the phone records had little or no relevance, we must conclude that Germano's lawyer reasonably concluded that it was unnecessary to obtain these records. *Gioglio*, 296 Mich App at 22-23.

Germano similarly argues that his lawyer should have called Cox's neighbors as witnesses because they would have been able to hear loud noises coming from the apartment during the attack. However, he does not identify any specific people who were in the vicinity at the time of the incident, nor what their potential testimony would be or how it would have any relevance to the facts of this case. Accordingly, he has failed to establish the factual predicate for this claim. *Id.* at 24-25.

Germano argues that his lawyer should have presented evidence regarding the inability of the extension cord to actually deliver an electric shock to Cox. However, it was evident from the testimony at trial that the cord did not physically harm Cox and testimony that the electric cord could not deliver a dangerous shock would not have been particularly useful to the defense. Here there was no evidence that Cox knew with certainty that the electrical cord could not harm him. To the contrary, Cox testified that he believed that he was about to be electrocuted and would die. Because the primary issue at trial involved the effect that Germano and Smith's actions had on Cox, a reasonable trial lawyer could conclude that expert testimony explaining that Germano's method of choice for tormenting Cox was unlikely to actually harm him was not relevant. Instead, Germano's lawyer could reasonably conclude that the best way to defend Germano was to highlight inconsistencies in Cox's testimony to show that he did not actually suffer physically or mentally. *Id.* at 22-23.

Germano failed to establish that his trial lawyer's decisions concerning the evidence fell below an objective standard of reasonableness. *Id.*

For his final argument, Germano asserts that he was deprived of counsel during a critical stage of the trial. He specifically states that his lawyer's failure to object to the substitution of trial court judges constituted a constructive deprivation of counsel. Further, he argues that his lawyer had a conflict of interest because he could not object to the substitution without risking future hostility from the judge.

Germano had the right to have counsel at all critical stages of the criminal process. *People v Willing*, 267 Mich App 208, 219; 704 NW2d 472 (2005). Here, it is plain that Germano had his trial lawyer present and available when the trial court elected to substitute another judge for the taking of the verdict. Germano's lawyer's failure to object to the substitution did not constitute constructive deprivation of counsel; rather, the failure to object must be assessed, if at all, in light of the constitutional right to the effective assistance of counsel, which Germano has not done.

There were no errors warranting relief.

Affirmed.

/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens
/s/ Michael J. Kelly