# STATE OF MICHIGAN

# COURT OF APPEALS

---

MICHELLE BURKHARDT,

       Plaintiff-Appellant,

v

SUE BAYLISS, DARYL GREEN, JAMES
KRAUS, SUE GRAHAM, DAVID EMMONS,
JOSEPH BROWN, and CITY OF LANSING,

       Defendants-Appellees.

UNPUBLISHED
July 18, 2017

No. 330092
Ingham Circuit Court
LC No. 14-000687-CL

---

Before: KELLY, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition to defendants under MCR 2.116(C)(10). We affirm.

## I. BACKGROUND

The instant case is plaintiff Michelle Burkhardt's second suit against her employer defendant City of Lansing. Plaintiff's first suit involved claims of gender discrimination, sexual harassment, the Whistleblower's act, and retaliation. On June 9, 2014, while plaintiff's first suit was pending on appeal, plaintiff filed this suit. Plaintiff pled one count retaliation under the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*.[1] Plaintiff alleged three adverse employment actions. According to the complaint, the first adverse employment action began on September 9, 2013, the next business day after the jury verdict was announced in her first action. On that day, plaintiff delivered documents supporting her claim for medical reimbursement to Amy Fraser in defendant City of Lansing's human resources office. Plaintiff alleged that on September 9, defendant Sue Graham, also an employee in defendant City of Lansing's human resources office, falsely reported to members of the City of Lansing police department that she

---

[1] Plaintiff also alleged a claim of defamation against defendant Sue Graham in the trial court in her motion in opposition to summary disposition. Plaintiff did not request leave to amend her complaint to add this claim. Defendants addressed the issue in relation to governmental immunity on appeal. Plaintiff however indicated that the issue is abandoned on appeal. ("The dismissal of the defamation claim is not part of this appeal.") Therefore, we do not discuss it.

saw plaintiff "in the hallway of the police building 'crying hysterically' and 'distraught' to the extent her emotional condition was in question." Plaintiff alleged that Graham's false statement resulted in plaintiff being confronted at a gas station in public by defendants, Sergeant Sue Bayliss and Lieutenant Elloree Sosebee, for a wellness check, escorted back to a conference room at the Ninth Precinct, and waiting forty minutes for a union attorney to arrive. After the union attorney spoke "with some command officers," plaintiff was able to return to and finish her patrol shift.

According to the complaint, the second adverse employment action occurred on March 21, 2014, the day after plaintiff's medical reimbursement claim was processed. Plaintiff alleged that on March 21, she was ordered by defendants Lieutenant David Emmons and Sergeant Joseph Brown to attend a meeting where she was forced to sign a document titled "light duty expectations" upon her returning to work after foot surgery. Plaintiff alleged that other officers on light duty who had not engaged in protected activity were treated more favorably and given less restrictions.

The third adverse employment action was alleged to have occurred on April 10, 2014, when plaintiff received a letter indicating that she would be the subject of an internal affairs investigation for "unsatisfactory work performance and insubordination with a reference date of March 24, 2012." According to plaintiff, March 24 would have been plaintiff's "first day back to work from the date of the 'expectations' letter and her trip to the hospital."

On August 6, 2015, defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(7) and (C)(10). Defendants argued that because plaintiff failed to plead an exception to governmental immunity, plaintiff's claim against defendant City of Lansing employee defendant Graham must fail. Defendants also argued that plaintiff's retaliation claim should be dismissed under MCR 2.116(C)(10) because plaintiff failed to establish an adverse employment action as required under the ELCRA. Plaintiff filed a motion in opposition on August 19, 2015. Plaintiff argued that the ELCRA "applies specifically to all employers and is a waiver of immunity when a governmental employer violates it." Plaintiff also argued she established a prima face case of retaliation by showing that her employer knew, but failed to take action to stop retaliatory harassment by co-workers.

On August 26, 2015, the trial court issued an Order Regarding Reassignment pursuant to MCR 8.111 that reassigned plaintiff's case from Judge Aquilina, who had been chosen by blind draw, to Judge Canady, III who had presided over plaintiff's first suit against defendant City of Lansing. Plaintiff opposed the order of reassignment and filed a motion to vacate the order wherein she argued that her current suit was not based on the same transaction or occurrence as her prior suit as required for reassignment under MCR 8.111(D)(2). Defendants argued that reassignment was proper because plaintiff's current claim of retaliation was based on occurrences from plaintiff's prior litigation, namely the protected activity of filing an ELCRA complaint in 2010, taking the matter to trial in 2013, and pursuing her reimbursement claim in 2013.

A hearing regarding the motion to vacate the reassignment was held on October 14, 2015. The motion was heard by Judge Canady II, who was not the chief judge. The court found that plaintiff's current case was an assertion that the same conduct recognized by the jury in her prior

case was continuing. The court held that plaintiff could bring a claim for ongoing conduct, but that the claim "clearly arises out of the past transaction or occurrence or lawsuit or course of conduct that existed between the City and [plaintiff]."

On October 21, 2015, the court held a hearing for defendants' motion for summary disposition. The parties argued consistently with their briefs. The court found that the citizen complaint made against plaintiff and the internal affairs investigation that followed were not matters of retaliation; rather they were issues confined to and resolved by plaintiff's union's collective bargaining agreement. The court also found that plaintiff was not forced to sign the light duty expectations letter. Instead, she was asked to sign to acknowledge receipt of the letter. The court determined that plaintiff did not experience any adverse employment action because she suffered no pecuniary loss and continued to work without being treated any differently after the wellbeing check, light duty expectations letter and citizen complaint. The court ruled there was no genuine issue of material fact related to whether the wellbeing check was an act of retaliation, and that plaintiff failed to establish a prima face case of retaliation where she suffered no adverse employment action. An order granting defendants summary disposition pursuant to MCR 2.116(C)(7) and (10) was issued the same day.

## II. STANDARD OF REVIEW

We review de novo the trial court's decision to grant or deny a motion for summary disposition. *Adair v State*, 470 Mich 105, 119; 680 NW2d 386 (2004).

A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. MCR 2.116(C)(10), (G)(4). [*Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).].

MCR 2.116(C)(7) permits summary disposition where "[t]he claim is barred because of release, payment, prior judgment, immunity granted by law, statute of limitations, statute of frauds, an agreement to arbitrate, infancy or other disability of the moving party, or assignment or other disposition of the claim before commencement of the action."

A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence. If such material is submitted, it must be considered. MCR 2.116(G)(5). Moreover, the substance or content of the supporting proofs must be admissible in evidence. . . . Unlike a motion under subsection (C)(10), a movant under MCR 2.116(C)(7) is not required to file supportive material, and the opposing party need not reply with supportive material. The contents of the complaint are accepted as true unless contradicted

by documentation submitted by the movant. *Patterson v. Kleiman*, 447 Mich. 429, 434, n. 6, 526 N.W.2d 879 (1994). [*Maiden*, 461 Mich at 119].

"The court may not make findings of fact or weigh credibility in deciding a motion for summary disposition." *Featherly v Teledyne Indus, Inc*, 194 Mich App 352, 357; 486 NW2d 361 (1992).

The trial court's interpretation of the clear and unambiguous contractual language of a release is a question of law that this Court reviews de novo. *SSC Associates Limited Partnership v General Retirement System*, 210 Mich App 449, 452; 534 NW2d 160 (1995).

III.  ANALYSIS

Plaintiff's complaint is entirely based upon claims of retaliation under the ELCRA. Plaintiff argues that several persons retaliated against her. She claims defendant James Kraus retaliated when he placed plaintiff on reassignment on September 9, 2013. She was also subjected to retaliation by defendant Graham who stalled the processing of plaintiff's medical reimbursement paperwork and told defendant Kraus that plaintiff was crying which caused the wellbeing check. She has a claim against defendant Bayliss who failed to relay to defendant Kraus that plaintiff was fine after the wellbeing check. She alleges retaliation against defendants Emmons and Brown who issued the light duty expectations letter to plaintiff and against defendants Kraus and Green who as supervisors did not stop the harassment of plaintiff by defendants Bayliss, Emmons and Brown. Finally, she has a claim against her employer the City of Lansing for failing to stop the harassment by its defendant employees.

Plaintiff complained that defendants' conduct was in violation of MCL 37.2701(a), (c), and (f). These subsections of the ELCRA provide:

Two or more persons shall not conspire to, or a person shall not:

(a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act.

* * *

(c) Attempt directly or indirectly to commit an act prohibited by this act.

* * *

(f) Coerce, intimidate, threaten, or interfere with a person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

"To establish a prima facie case of retaliation under the Civil Rights Act, a plaintiff must show (1) that the plaintiff engaged in a protected activity, (2) that this was known by the defendant, (3) that the defendant took an employment action adverse to the plaintiff, and (4) that there was a

-4-

causal connection between the protected activity and the adverse employment action." *Meyer v City of Ctr Line*, 242 Mich App 560, 568–569; 619 NW2d 182 (2000).

Pursuant to MCL 37.2701(a), a person engages in a protected activity when he or she "opposed a violation" of the ELCRA or "made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under" the ELCRA. Plaintiff states that the protected activity she engaged in was the trial from her first action. In other words, plaintiff's protected activity was that she "testified, assisted, or participated in an investigation, proceeding, or hearing under" the ELCRA.[2] .

There is no question as to whether plaintiff participated in a protected activity when she litigated her claims in the prior trial. We therefore look to the next prong of a retaliation claim: proof that the named defendants were aware of the protected activity. There is a question of fact as to whether the named defendants were aware of the ELCRA complaint. Some defendants admitted that they were aware of plaintiff's prior suit and the jury verdict rendered. Other defendants were unsure. Given the testimony of defendants, the size of the police department, the supervisory status of some of the defendants and public reporting of the case, the plaintiff meets her burden as to establishing a question of fact on knowledge. Defendant Graham testified that she was made aware of the result of the trial by having read about it in the newspaper. However, she was not asked and, did not testify, that she knew of the result on September 9, 2013, when the wellbeing check occurred. Defendant Bayliss could not remember whether she was aware of the jury verdict on September 9, but was aware of litigation between plaintiff and defendant City of Lansing. Defendant Green did not provide any testimony as to his knowledge of the verdict or trial on the day of the wellbeing check. Defendant Kraus testified to being aware of the jury verdict, but could not remember if he knew of it on September 9.

Next, we analyze the plaintiff's proofs on whether she suffered adverse employment actions because of her prior lawsuit. "There is no exhaustive list of what constitutes adverse employment actions and what might constitute an adverse employment action in one

---

[2] Instead of viewing the trial from the first action as the protected activity plaintiff engaged in under the ELCRA, the court chose to revisit certain allegations involved in the first action—most likely because plaintiff reiterated those allegations in the complaint for this action— and hold that most of plaintiff's retaliation claim was covered by res judicata and collateral estoppel. Res judicata "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 418; 733 NW2d 755 (2007) (quotation and citation omitted). Collateral estoppel bars relitigation of an issue when "(1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) the same parties had a full and fair opportunity to litigate the issue, and (3) there was mutuality of estoppel." *Estes v Titus*, 481 Mich 573, 585; 751 NW2d 493 (2008). Because plaintiff is not relitigating the acts she claimed were retaliation in her first action, and the court's summary disposition holding here focused on acts that occurred after the trial, a discussion of res judicata and collateral estoppel is not germane to the issue of whether plaintiff established a prima facie case of retaliation.

employment context might not be actionable in another employment context." *Chen v Wayne State Univ*, 284 Mich App 172, 201; 771 NW2d 820 (2009) (internal citations omitted). " '[T]ermination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation' " have all been recognized as adverse employment actions. *Wilcoxon v Minnesota Min & Mfg Co*, 235 Mich App 347, 363; 597 NW2d 250 (1999) quoting *Kocsis v Multi–Care Mgt, Inc*, 97 F3d 876, 886 (CA 6, 1996) quoting *Crady v Liberty Nat'l Bank & Trust Co*, 993 F2d 132, 136 (CA 7, 1993).

We are, however given clear guidance as to the nature and extent of conduct that may rise to the level of an adverse employment action. "[A]n adverse employment action (1) must be materially adverse in that it is more than 'mere inconvenience or an alteration of job responsibilities,' and (2) must have an objective basis for demonstrating that the change is adverse, rather than the mere subjective impressions of the plaintiff." *Meyer*, 242 Mich App at 569, quoting *Wilcoxon*, 235 Mich App at 364. *Meyer* held "that a supervisor's decision not to take action to stop harassment by co-workers in retaliation for an employee's opposition to a violation of the Civil Rights Act can constitute an adverse employment action. Where the harassment is sufficiently severe, a supervisor's failure to take action to respond can constitute a materially adverse change in the conditions of employment." 242 Mich App at 571.

The first instance of alleged retaliation concerns the well-being check the day after the conclusion of the first trial. Plaintiff claims that Graham, Bayliss, Green and Kraus participated in processing the wellbeing check. Viewing the evidence in a light most favorable to the plaintiff, the wellbeing check subjected her to being interviewed by multiple persons based upon either incomplete or false assertions regarding her emotional state. Based upon those assertions she was removed from patrol duty for two hours. However, there is no evidence that plaintiff suffered a "[t]ermination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities," as a result of the wellbeing check. *Wilcoxon*, 235 Mich App at 363; (quotations omitted). Being removed from patrol duty for two hours as part of the wellbeing check may have been an inconvenience, but inconvenience in and of itself does not rise to the required level of being "materially adverse." *Meyer*, 242 Mich App at 569, quoting *Wilcoxon*, 235 Mich App at 364.

The second instance of alleged retaliation concerns the processing of plaintiff's medical reimbursement claim. Plaintiff makes two arguments here. First, she claims that the processing of the reimbursement was a protected activity for which she was subject to retaliation. Secondly, that the reimbursement was, itself, delayed in retaliation for other protected activity. Neither claim is viable.

In her argument concerning the filing of the medical reimbursement claim as a protected activity, plaintiff alleges she suffered two adverse employment actions. She relates receiving the light duty expectations letter to the day after her medical reimbursement claim was processed. Plaintiff also connects the citizen complaint that sparked the internal affairs investigation to the light duty expectations letter because the complaint was made the next business day after she received the letter. Fatal to this theory is the fact that plaintiff's pursuance of her medical reimbursement claim was not a protected activity. The claim was awarded to plaintiff by an

arbiter after she filed a grievance with her union under the terms of its collective bargaining agreement. The award was pursuant to the agreement and not under the ELCRA. For these reasons, the light duty expectations letter and the related citizen complaint cannot be considered retaliation under the ELCRA. Therefore, summary disposition was proper as to defendants Emmons and Joseph as well as to defendant Kraus in his capacity as their supervisor for plaintiff's claim that the light duty expectations letter and citizen complaint were in retaliation for pursuing her medical reimbursement claim.

Plaintiff's claim that defendant Graham retaliated against her for filing the prior lawsuit by stalling the processing of her medical reimbursement claim paperwork is precluded by a release plaintiff signed with defendant City of Lansing on October 1, 2014. The interpretation of a release is a question of law. *Cole v Ladbroke Racing Mich, Inc*, 241 Mich App 1, 13-14; 614 NW2d 169 (2000). "The scope of a release is governed by its terms as indicating the intentions of the parties at the time it is accepted." *Auto-Owners Ins Co v Higby*, 57 Mich App 604, 606; 226 NW2d 580 (1975). "If the text in the release is unambiguous, we must ascertain the parties' intentions from the plain, ordinary meaning of the language of the release." *Gortney v Norfolk & W Ry Co*, 216 Mich App 535, 540; 549 NW2d 612 (1996). "The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity." *Cole*, 241 Mich App at 14. "If the terms of the release are unambiguous, contradictory inferences become subjective, and irrelevant." *Gortney*, 216 Mich App at 541; (citation and quotation marks omitted).

The release provided in pertinent part:

> In consideration for the payment of THREE THOUSAND, ONE HUNDRED AND SEVEN DOLLARS AND NINETY-SEVEN CENTS ($3,107.97) by the City of Lansing, receipt of which is hereby acknowledged, I, Michelle Burkhardt, for myself, my heirs, executors, administrators, representatives and assigns hereby release and discharge the City of Lansing, its officers, officials, employees, agents, insurers and any other person, firm or corporation charged or chargeable with any responsibility or liability, from all claims, demands, actions or causes of action regarding all covered medical expenses incurred between April 1, 2012 and April 26, 2013.
>
> This Release constitutes the complete understanding between the Parties. . . .
>
> * * *
>
> . . . this payment and settlement is pursuant to the arbitrator's opinion and is also made to terminate further controversy respecting medical claims . . .
>
> * * *
>
> . . .this payment is the sole consideration for the City's release and is in full and complete settlement of all covered medical expenses incurred between April 1, 2012 and April 26, 2013. . . .

Plaintiff argues that the release was limited to the actual medical expenses incurred between April 1, 2012 and April 26, 2013, and does not apply to plaintiff's claim of retaliation against

defendant Graham. In other words, the release was meant to prevent any further recovery of medical expenses for that time period. The issue of the release is nonconsequential when plaintiff presents no evidence actually showing or inferring that defendant Graham stalled her medical reimbursement claim as discussed below. Regardless, plaintiff's understanding of the release's scope is erroneous. The release plainly reads that the settlement amount applies to the medical expenses incurred in the one-year period referenced, but also that defendant City of Lansing and its employees are discharged "with *any* responsibility or liability, from *all* claims, demands, actions or causes of action regarding all covered medical expenses." (Emphasis added). "[T]here is no broader classification than the word 'all.' " *Skotak v Vic Tanny Intern, Inc*, 203 Mich App 616, 619; 513 NW2d 428 (1994). The unambiguous language of the release illustrates that claims, actions, or causes or action, other than those seeking medical expense reimbursement, were anticipated and included.

Plaintiff also argues that the court engaged in impermissible fact-finding when it ruled on the summary disposition motion. We reject plaintiff's argument that the trial court engaged in impermissible fact-finding regarding the effect of the release because the interpretation of a release is a question of law that the court can decide. *Cole*, 241 Mich App at 13-14. We agree that the court made a fact-finding regarding whether plaintiff suffered an adverse employment action however, that finding was both supported by the record as previously noted, and was therefore, a permissive finding. The issue of whether plaintiff suffered an adverse employment action was properly before the court on defendant's motion for MCR 2.116(C)(10) summary disposition. "[A] court may not weigh the evidence before it or make findings of fact; if the evidence before it is conflicting . . . ." *DeFlaviis v Lord & Taylor, Inc*, 223 Mich App 432, 436; 566 NW2d 661 (1997). We reject the argument that the court made any fact-finding on the plaintiff's fitness for duty. The court's statement that plaintiff was found unfit for duty was not a factual finding but rather a reference to the medical testimony and determination from plaintiff's first action. The court's statement that plaintiff was *again* seen crying in the hallway was not a finding that plaintiff was seen crying in the hallway twice, as plaintiff argues. In that instance, the court used the word "again" while discussing whether defendants thought plaintiff was having a reoccurrence of the problems that caused her unfitness in the first action.

While the court did not err in granting defendants summary disposition on plaintiff's claim of retaliation, it did err in reassigning plaintiff's case to Judge Canady, III based on MCR 8.111(D). Reassignment pursuant to MCR 8.111(D)(2) is proper "if an action arises out of the same transaction or occurrence as a civil action previously dismissed or transferred[.]" To the extent that plaintiff's claims of retaliation are based on either events arising after the resolution of the first action or arbitration claims pursuant to a collective bargaining agreement, the events were not subject to the previous suit. Although we find the assignment was erroneous, we decline to reverse because plaintiff fails to show she was prejudiced by the reassignment. "[P]laintiff is required to show prejudice as a result of the improper assignment," *Natl Waterworks, Inc v Intl Fid & Sur, Ltd*, 275 Mich App 256, 261; 739 NW2d 121 (2007), to warrant reversal, *People v McCline*, 442 Mich 127, 128; 499 NW2d 341 (1993). Prejudice is established by showing that "the reassignment of the case in the lower court was motivated by impermissible considerations or that the lower court judge was biased or partial." *Kloian v Schwartz*, 272 Mich App 232, 243; 725 NW2d 671 (2006). Plaintiff has neither pled nor proven that she was prejudiced by the substitution of Judge Canady, III.

Affirmed.

/s/ Michael J. Kelly
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien
